PER CURIAM. For the reasons stated in the foregoing opinion the judgment is affirmed.

*Affirmed.*

STATE INS. CO. OF DES MOINES, IOWA, V. TAYLOR.

1. ACTION ON FIRE INSURANCE POLICY — THE INSURED NOT PREJUDICED BY FALSE ANSWERS IN HIS APPLICATION MADE BY AN AGENT OF THE INSURANCE COMPANY WITHOUT HIS KNOWLEDGE.— A fire insurance policy indorsed with a copy of an application purporting to have been signed by the insured, and referring to it as made by him, is not avoided by untrue answers, which he did not give, contained in the application, written by an agent with power to solicit insurance, receive premiums and deliver policies, and by him signed in the name, but without the knowledge or consent, of the insured.

2. PLEADINGS, ISSUES AND TESTIMONY.— Where an answer to a complaint upon a policy of insurance averred that material statements in the plaintiff's application for insurance were not true, a replication thereto averring that the plaintiff did not make or sign the application, but that it was written without his knowledge by the agent of the insurance company, the replication not being attacked by demurrer or motion, makes the responsibility for the application a material issue in the case, and entitles the insured to testify that he did not make or sign it, and to give his version of what actually took place between himself and the agent in reference to the application.

3. THE RULES GOVERNING PRINCIPAL AND AGENT APPLICABLE IN THE CONSTRUCTION OF INSURANCE CONTRACTS.— Contracts of insurance are to be considered and construed by the same rules of law and of interpretation as other contracts, in order to carry out the intention of both parties. Consequently the employment by an insurance company of an agent to solicit, receive and forward to the company applications for insurance, to receive and forward policies, and to collect the premiums, makes him the agent of the

| 14  | 499 |
| 2a  | 488 |

| 14  | 499 |
| 3a  | 529 |

| 14  | 499 |
| 21  | 140 |
| 6a  | 110 |
| 7a  | 222 |

| 14  | 499 |
| 8a  | 416 |

| 14   | 499 |
| 16a  | 350 |
| e16a | 422 |

company for the performance of these duties; and any misstatements, errors or omissions resulting from his fraud, neglect or carelessness are chargeable to the insurer, and not to the insured.

4. DEFENSE TO ACTION ON POLICY, ALLEGING VIOLATIONS OF ITS PROVISIONS BY THE INSURED — FACTS AND CIRCUMSTANCES MAY BE SHOWN IN REBUTTAL. — The claim that the policy has been avoided by a violation of the provision thereof that the house insured is .occupied by the owner as a private residence, whereas it was occupied as an inn or boarding-house, is not available as a defense where it appears that the character of the house in this particular was not changed after the insurance was effected; that the company's agent was informed at the time of making the contract that persons were entertained at the house, more or less, and some boarders kept at times, owing to a want of other places of entertainment, and that this use of the property in no way contributed to the loss.

5. CONSTRUCTION OF A PROVISION OF THE POLICY AGAINST INCREASING THE HAZARD. — A provision of the policy, that it shall be void if the hazard is increased without the consent of the company in writing, applies only to the premises of the insured and property under his control. The language cannot be extended to property not under his control, nor to the acts of contiguous owners. So, likewise, the statement made at the time of the application for insurance, that a contiguous building, not owned or controlled by the applicant, was vacant, is to be regarded as a statement of its condition at that time, not as a guaranty that it would remain in that condition.

6. MEASURE OF DAMAGES — RULE FOR ASCERTAINING THE VALUE OF AN INSURED BUILDING WHICH HAS BEEN DESTROYED BY FIRE. — In a suit on an insurance policy on a house destroyed by fire, the measure of damages is the value at the time of the loss; and, to arrive at that, the original cost, the cost of a like building at the time of the trial, and the difference in value between the house burned and a new one, by reason of age and use, are all proper .subjects of inquiry.

*Appeal from District Court of Chaffee County.*

ON the 30th day of January, 1885, appellant issued to appellee a policy of insurance on his frame house, used as a residence, in the village or town of Hancock, Chaffee county, and its contents, including wearing apparel, family stores and provisions, for the sum of $1,200,— $800 being on the building and $400 on the contents; in-

suring against fire and lightning for one year for a premium of $48. In the body of the policy appears the following:

"And it is expressly understood and agreed by the parties hereto that application and survey No. 183,956, made by the assured, is hereby made a part of this policy and a warranty on the part of the assured, and that this policy is issued upon the faith of the statements in said application and survey as they thus appear in writing therein, only." Also: "Any false statement in the application shall make this policy void." "In case of loss, any attempt at false swearing or fraud of any kind shall be a forfeiture of all claims against the company on this policy." And: "This company reserves the right to rebuild and repair in all cases of loss."

Of the various provisions contained therein these are thought to be all that are involved in, or necessary to a determination of, the case. Upon the back of the policy is what purports to be an application for insurance made by appellee, with his name attached, in which it is stated, among other things, that the house was "frame;" "one to three years old;" "in good repair;" "cash value, $1,500;" "finished;" "west and north side painted." "It is a two-story frame building, 18x36; one addition 10x22, and one 10x16;" "it is occupied by owner as a private dwelling." "Shingle roof." "Chimneys corrugated or double iron;" "start below ceiling and roof." Number of stoves, "two in use, two others occasionally." "Pipes do not enter brick flues;" "do not pass through partitions or floors." "They are secured by double thimbles of sheet iron." That the "barn was distant from the house about ninety feet." "South eight feet, a one and one-half story log residence, now vacant." "East ninety feet to stable, frame, 16x30."

On the 3d day of November of the same year, the house took fire in the upper part (ceiling or roof) from a stove-pipe, and was destroyed, with most of the contents. On

the next day appellant was notified of the loss; and, shortly after, proper proof was made of the loss, and demand for payment, which was refused, and a suit was instituted. In the complaint the policy of the insurance is set out in full, and on the back of it the supposed application of appellee for insurance.

In the answer the defendant admitted the making and delivering of the policy, denied that the loss was $1,200 as shown by proofs of loss submitted, and said it ought to be not to exceed $524.62. The defense relied upon was, the application for insurance made and signed by the plaintiff was the basis of the contract upon which the policy was made, and that it was false or fraudulent in many particulars, notably (1) in the value of the house, stated to be $1,500 when in fact it did not exceed in value the sum of $300; (2) that the building was not occupied as a private dwelling, but as a public inn and boarding-house; "(3) that the chimneys in said house were not of corrugated or double iron, and that there were no chimneys in said house, and never was; (4) that the chimneys in said house did not start below the ceilings and roof in said house, and no chimneys whatever were in said house, or were ever used by the plaintiff, at any time; (5) that it was not true that the stovepipes did not pass through partitions, and floors, but they did pass through partitions, floors, ceilings, and roof of the house, and were unprotected; (6) that the stovepipes were not secured at all as stated in the application; (7) that the barn was not ninety feet distant from the house, and not to exceed twenty feet; (8) that the log house was not eight feet distant from the insured premises,— not to exceed five feet,— and at one point connected with the house; (9) that there was an addition to the house, 8x16 feet, not mentioned in the application at all." And as a special defense that the log-house adjoining was at the time of the fire, and for two months previous had been, occupied as a grocery store, and that the proprietors kept in stock

quantities of kerosene oil and giant powder, which greatly added to the risk, and that appellee failed to notify defendant of the fact.

All the averments in the several special answers were traversed by the replication of the plaintiff. The case was, by agreement of parties, tried by the judge of the district court without a jury. He found for the plaintiff in the sum of $1,045, and judgment was entered for that amount.

STUART BROS., for appellant.

Messrs. W. S. DECKER and C. A. ALLEN, for appellee.

REED, C. It is contended by appellant in argument that the appellee, by setting out in his complaint the application for insurance from the back of the policy, upon which his name appeared, indorsed it as his act and made it a part of the contract sued upon, and was estopped from denying it. The pleader set out the policy of insurance as the basis of his action, and then says: "On the back of the policy is a copy of the application made for the insurance, in writing and print, as follows." It is neither indorsed as correct nor adopted as or stated to be the application of the insured.

The appellant, in its amended answer, states that appellee made his application for a policy of insurance in writing, setting forth the alleged application, and avers that material statements in the application were not true, and for that reason seeks to avoid liability for the loss. The appellee, in his replication, says he did not make or sign any written application, but that the one referred to was made by Van Arsdale, the agent of the company, without his knowledge or consent. There was no demurrer or motion filed to this reply, and the case proceeded to trial upon the issues made by the complaint, answer and replication. By these pleadings the responsibility for the written application was made a material

issue in the case, and the court properly allowed appellee to testify that he did not make any written application, and also to give his version of what actually took place between the parties in reference to the transaction. It is apparent from the evidence that the application for insurance upon which the policy was issued was incorrect in many important particulars; so far from being a true statement of the facts in regard to the insured property as to render a policy void if established by proof to be the act of the insured.

The first question to be determined from the evidence and the law applicable to the facts is whether the *application* was that of the insured, or for which he was responsible, or the application and act of the insurer by its agent, for which it was responsible. That A. D. Van Arsdale was the agent of the appellant to the extent of soliciting insurance, sending the applications for insurance to the company, obtaining policies, delivering them to the insured, and collecting the premiums, was established by his own evidence and that of J. A. Dubbs, the general agent for the state of Colorado. That in this instance he solicited the insurance is shown by the evidence of the appellee, and is undisputed. In regard to the application, there is no great conflict between the testimony of appellee and Van Arsdale. It plainly appears that no application was made out by appellee, or in his presence, nor submitted to him, nor signed by him, and no authority given to the agent to sign his name; that the application was not seen by him, and that he was not informed of its character or contents; that the interview between him and the agent occurred late at night in a saloon, without a blank form of application, and with no copy of the questions to be asked and answered. Van Arsdale says: "I asked questions, and took his answers, and put them down from memory, as nearly as I could, next morning." Appellee specifically denies the making of any of the important statements con-

tained in the application relied upon to defeat a recovery; and, in regard to several of them, he is corroborated by Van Arsdale, and in no important point is he contradicted by him. Van Arsdale, in making up and forwarding the application, cannot be regarded as the agent of the insured, as supposed and contended by counsel for appellant. "Where an insurer intrusts applications in blank for insurance to a person who forwards the same to the insurer, and is the medium through whom the insurer delivers the policy and receives the premium, the person so intrusted therewith is treated as clothed with the requisite authority to effectuate the duties confided to him, and to that extent represents the company, and can bind it. * * * The assured has a right to rely upon it that the agent has authority to explain the inquiries put in the application, and to determine what facts are required to be stated, as well as how they shall be stated, and, acting upon his direction, if any error is committed, it is chargeable to the insurer, and not upon the assured; and, if he fills out the application, and, being correctly informed of the facts, misstates them, or omits to state them, the consequences are not to be visited upon the assured." Wood, Ins. § 384; *Malleable Iron Works v. Phœnix Ins. Co.* 25 Conn. 465.

"When a person is in fact the agent of the insurer in procuring a policy, a clause in the policy that persons so acting are agents of the insured, and not of the insurer, does not change the fact. He is still the agent of the company as to the acts which are done in its behalf." May, Ins. § 140.

In *Insurance Co. v. Ives*, 56 Ill. 402, the court, in commenting upon the effect of such a provision in the policy, very pertinently says: "The words have no magic power residing in them capable to transmute the real into the unreal, nor had they power to make the agent of the company an agent of the insured." May, Ins. § 140; *Insurance Co. v. Chipp*, 93 Ill. 96; *Eilenberger v. Insurance Co.* 89 Pa. St. 464.

"If at the time of the application the latter [the insured] states facts material to the risk, and the agent neglects to communicate them to the company, in consequence of which a policy is issued in ignorance of the fact, the neglect is not imputable to the applicant so as to make him responsible as for a concealment. That the agent is instructed to regard himself as the agent of the applicant rather than of the company, these instructions not being known to the applicant, does not alter the case." May, Ins. *supra; Bebee v. Insurance Co.* 25 Conn. 51.

*Wilson v. Insurance Co.* 4 R. I. 141, was a case where the facts were very similar to those disclosed by the testimony in this case, where the agent sent an application he was not authorized by the applicant to send. He was held to be the agent of the company, so far as to estop it from denying the contract and from setting up its mistakes as misrepresentations as working a forfeiture. It was said: " He was at least the agent of the company for forwarding the application; and his misconduct in that regard was imputable to his principal, and could not be allowed to prejudice the rights of the applicant, who did not know of it." See, further, May, Ins. § 141; *Denny v. Insurance Co.* 13 Gray, 492; *Ames v. Insurance Co.* 14 N. Y. 258; *Malleable Iron Works v. Phœnix Insurance Co., supra; Woodbury Sav. Bank v. Charter Oak Ins. Co.* 31 Conn. 517.

In *May v. Insurance Co.* 25 Wis. 291, the question of agency presented in this case was ably discussed, and it was said: " The recent cases upon this subject fully sustain the position that upon this state of facts the company is responsible for the accuracy and omissions of its agent, even without any express undertaking to be so, and that it cannot avoid liability by reason of any discrepancy between the real facts as disclosed to him, and his presentation of them in the papers. The tendency of modern decisions has been strongly to hold these companies to that degree of responsibility for the acts of the

local agents which they scatter through the country that justice, and the due protection of the people, demand, without regard to private restrictions upon their authority, or to cunning provisions inserted in policies with a view to elude just responsibility. See, also, *Rowley v. Insurance Co.* 36 N. Y. 550; *Insurance Co. v. Cooper*, 50 Pa. St. 331; *Viele v. Insurance Co.* 26 Iowa, 9; *Insurance Co. v. Schettler*, 38 Ill. 166; *Eames v. Insurance Co.* 94 U. S. 621.

Applying the law to the facts as proved, we must conclude that the employment of Van Arsdale, by the appellant, in the capacity and for the purpose he was shown to have been employed, made him the agent for the company to the extent of receiving, making out and forwarding to the company correct and proper applications for insurance, and that when, as in this instance, he entered upon the duty, and attempted to discharge it, any misstatements, errors or omissions, the results of his own fraud, carelessness or neglect, are to be deemed those of the insurer, and not those of the insured. Contracts of insurance, notwithstanding the intricate and complicated provisions contained in the policies,— perhaps found necessary to protect companies from fraud,— are to be considered and construed by the same rules of law and interpretation as other contracts, so as to carry out the intention of both parties, and hold each party responsible for his own wrong. Where there is on the part of the assured such intentional concealment, misrepresentation or omission as amounts to fraudulent conduct on his part in procuring the insurance, it should vitiate and avoid the contract, and he should suffer the direct results of his own misconduct; but where, on the other hand, there is shown no fraudulent or wrongful representation or omission on the part of the assured, and the wrong is perpetrated through the fraud or negligence of the accredited agent of the insurer, it would be neither just nor equitable to hold the insured responsible for it.

In explaining our views in the present case, we can do far better by adopting and quoting from so eminent a jurist as Folger, J., than by any efforts of our own. In *Rohrbach v. Insurance Co.* 62 N. Y. 63, in a case presenting similar questions to the one under discussion, he said: "It is to be regretted that corporations of the power and extended business relations with all classes in the community which insurance companies have should prepare for illiterate and confiding men contracts so practically deceptive and nugatory, and should, in cases as free from fraud and wrong on the part of the insured as this is, hold their customers to the letter of an agreement so entered into. I am aware that often the companies are made the victims of dishonest and designing persons, but I cannot agree that the remedy for that is to refuse to be bound by the acts of agents of their own selection when dealing with simple and unlettered men. If there should be less greediness for business, and such care taken in the selection and appointment of agents as would insure the confidence of the companies in their capability, discretion and integrity, it would not need that there be laid upon unwise policy-holders an agreement to take the burden of the opposite qualities in those put forward to them as actors for the insurers."

Under the evidence, it must be held that the application which was forwarded was the act of the agent, and consequently the act of the insurer, for which it alone was responsible, and that the company is estopped to set up any statements contained in the application to defeat a recovery. To hold otherwise would be to place every simple or uneducated person seeking insurance at the mercy of the insurer, who could, through its agent, insert in every application, unknown to the applicant, and over his signature, some false statement which would enable it to avoid all liability, while retaining the price paid for supposed insurance. Courts, while careful not

to discriminate against insurance companies, should give to their contracts such interpretation, and to the acts of their agents such construction, as to afford some security to those with whom they contract.

It is contended that the policy was avoided by the assured keeping an inn or boarding-house. It does not appear from the evidence that the character of the house in that particular was changed after the insurance was effected. It appears from the evidence of the appellee that the agent was informed that persons were entertained at the place, more or less, owing to want of other places of entertainment, and that some boarders were kept at times. This is admitted by the agent, Van Arsdale, who says he communicated the fact to the general agent. Both the special and the general agents having been informed that parties were kept, and it not having been shown that such business was more extensively done after than before insurance, or that the loss by fire was in any way caused by people having been entertained, it should not be considered of sufficient importance to reverse the judgment.

It is also urged that the occupancy of the adjoining log-house as a store, carrying in stock kerosene and giant powder, greatly increased the risk, and that the failure of appellee to notify the company worked a forfeiture of the policy. It is not claimed that appellee owned or exercised any control over the building, or that the statement that the building was vacant at the time of the insurance was untrue. The proof shows it to have been occupied only two months before the fire occurred. It is provided in the policy that, if the "hazard is increased without the consent of the company in writing," the policy shall be void. This should be construed as only applying to the insured premises, or to property under the control of the insured. There is nothing in the language used which would extend it to the property not under his control, and the acts of others, and

hold him responsible for the acts of his neighbors or of contiguous owners, and require him to keep informed as to the manner in which other persons in the neighborhood used their property, or to communicate the facts to the insurer. The contract of insurance being mutual, good faith should require that he give information of any fact or act of his own, or with his consent, on property insured or adjoining, and under his control, whereby the risk was increased. Further than that he could not be expected to go. The statement that at the time of the application the building was vacant must be regarded only as a statement of its condition at that time, not a warranty that it should remain so. He, not being the owner, could not be presumed to have intended to take possession and control of the property. May, Ins. §§ 244, 247; Wood, Ins. § 237.

In this case it is shown that the use of the log building owned by a third party in no way contributed to the destruction of the insured property or the loss; that the fire originated in the roof of the insured building, extended to and consumed the log building, but not until the goods, including oil and giant powder, had been removed.

The only remaining question is as to the rule of damages in arriving at the value of the building destroyed. It is contended that the amount allowed was excessive; that the true value was what the property would have sold for in the market. Counsel do not say whether, in fixing the value, the house is to be considered a chattel, and its value what it would bring severed from the realty, or whether its value was to be estimated in connection with the land on which it stood. The rule contended for cannot be the correct one. If so,—if there was no market demand for the property so it could be sold,— it would have no value, and there would be, consequently, no loss. Another trouble is as above suggested: It would make the value of the house insured to depend upon the marketability of the uninsured land.

A farmer might have an insured building of the value of $5,000 on a large farm, and yet be held to have sustained no loss by its destruction because there was no demand for land in that location, and the farm could not have been sold. While the price for which the property could be sold might be admissible in evidence to assist in arriving at its value, it was not the only, nor a safe, criterion. If not salable at all, it might have a value to the owner as a home for himself and family, or for business purposes. Where, as in this case, the policy was "valued" (amount of insurance fixed), the rule is indemnification to the owner not exceeding the sum insured; the question, not what some one would have paid for the building, but what amount would indemnify the owner for the loss sustained.

The rule of damages is the value of the property lost, and not the cost of replacement. *Steward v. Insurance Co.* 5 Hun, 261. It is for the jury to determine how much money will make good to the insured his loss. *Brinley v. Insurance Co.* 11 Metc. 195. "It is for the jury to say what the actual value of the building was, in view of all the facts, and their finding is conclusive." Wood, Ins. § 446.

Counsel seem to have confounded the measure or rule of damage for merchandise or goods destroyed with that for buildings. In the former the value in market is correct. In the latter it must be "*the actual value of the property in the condition it was in at the time of loss, taking into consideration its age and condition, and not necessarily what it would cost to erect a new building.* The assured should be allowed *the value of his building at the time of loss; and if, by reason of age or use, it is less valuable than a new building erected upon the same plan, of similar materials and of the same dimensions, the insured should be allowed for such difference arising from deterioration.*" Wood, Ins. § 446; *Insurance Co. v. Sennett,* 37 Pa. St. 205.

It follows that the original cost of the building, the cost of constructing a like building at the time of trial, on the same land, and the difference in value between the building destroyed, by reason of its age and use, and a new one, were all proper inquiries to assist the court in arriving at a just conclusion in regard to the loss sustained; and the admission of evidence upon these points was not erroneous, as supposed by appellant. In our view of the case, no serious errors occurred upon the trial, and the judgment should be affirmed.

RICHMOND and PATTISON, CC., concur.

PER CURIAM.   For the reasons stated in the foregoing opinion the judgment is affirmed.

*Affirmed.*