WICH, PLAINTIFF IN ERROR, v. THE EQUITABLE FIRE AND MARINE INS. CO., DEFENDANT IN ERROR.

1. INSURANCE—CHANGE OF TITLE.

The clause in a policy of insurance providing against a change in the interest, title or possession of the property insured, is not violated by a change, not in the fact of title, but only in the evidence thereof. If the change is merely nominal and not of a nature calculated to increase the danger of loss, the policy is not violated.

2. INSURANCE—INCORRECT STATEMENTS.

It is a good answer to a plea setting up as a breach of the condition of a policy that the interest and ownership of the assured in the property is incorrectly stated, to show that it was so stated by the mistake or wrongful act of the agent to whom the application was made, that he was fully advised as to the fact and was acting within the scope of his authority.

3. BURDEN OF PROOF.

When the insurer sets up want of title in the assured, the burden of proof devolves upon him of establishing, not only that the assured had no title to the property, but also that he had no insurable interest therein.

4. POLICY—PRIMA FACIE EVIDENCE.

A policy issued to a person is *prima facie* evidence of his title to the premises, and, unless questioned, is conclusive.

5. INSURANCE—OWNERSHIP.

The purchaser of real estate by contract is the equitable owner, and, for the purpose of insurance, may be said to be vested with the entire, unconditional and sole ownership of the property.

6. FRAUD—BURDEN OF PROOF—PRESUMPTION.

If fraud on the part of the assured is set up in avoidance of the policy, the insurer must establish it by competent affirmative evidence, as

it will be presumed that the assured acted honestly and in good faith.

*Error to the District Court of Arapahoe County.*

FEBRUARY 4, 1889, The Equitable Fire and Marine Insurance Company, defendant in error, made and delivered to John Wich, plaintiff in error, in the business name of The Arkansas Valley Brewing Company, its policy of insurance for the sum of $1,530 upon certain buildings and personal property to run for the period of one year.

September 5, 1889, the buildings and their contents were destroyed by fire. Proof of loss was made and the company denied any liability under the policy. This action was brought to recover the sum mentioned.

The answer is general and specific. It denies that the business name of the plaintiff was The Arkansas Valley Brewing Company; that the property insured was the property of plaintiff at the time of the issuance of the policy or at the time of the loss. It admits that the policy was issued to The Arkansas Valley Brewing Company, but alleges it was procured by false and fraudulent representations in this, that Wich represented he was the sole owner of the premises when in fact neither he nor the Arkansas Valley Brewing Company were sole owners. It is further claimed that the value of the property was not as represented.

From the record we learn that at the time of the issuance of the policy the property stood in the name of Gottlieb Hess, Paul Voght, Harmon Ell and the plaintiff Wich. Wich testified that at the time of the issuance of the policy he explained the nature of his title to the agent asserting that Hess, Voght and Ell had only a conditional interest in the property; that they had agreed to put in as their part of the purchase price the sum of $3,000 each within a certain time, and in case of default they would transfer their interests to him; that in the month of May, 1889, Hess, Voght and Ell executed a quitclaim deed to him of their entire interests, thus making him, as he represented himself to be,

the sole owner of the property in fee, subject to a certain incumbrance. It is in testimony also that Wich was doing business in the name of The Arkansas Valley Brewing Company, although it does appear from the record that, in response to a direct question as to whether he was doing business in such name, he answered, "No, sir." Yet he qualifies this answer immediately afterwards. It further appears that the policy of insurance was issued prior to the signing of the application. The cause was tried to a jury, and at the close of the plaintiff's testimony motion for a nonsuit was made and granted. To reverse this judgment this writ of error is prosecuted.

Mr. CHARLES M. BICE and Mr. S. D. WALLING, for plaintiff in error.

Mr. C. J. HUGHES, Jr., for defendant in error.

RICHMOND, P. J., after stating the facts, delivered the opinion of the court.

The main contention of the defendant company is that the title of the property at the time of the issuance of the policy was not in the plaintiff, and that by the terms of the policy it is provided that if the interest of the insured be other than unconditional and sole ownership, or not owned by the insured in fee simple, or if any change takes place in the interest, title or possession of the property (except change of occupants without increase of hazard), whether by legal process, judgment or voluntary act of the insured, or if the building remains vacant for ten days * * * then the policy shall be void. The policy may have been issued by the company upon the representations of the plaintiff that he was the owner in fee of the premises, although he claims that at the time he notified the solicitor of the condition of the title. Admitting that the title did not stand in the name of the plaintiff at that time—it certainly did long prior to the destruction of the property by fire—and in keeping with the

understanding of the company at the time of issuing the policy.

· " The object of providing against a transfer or change of title is to guard against a diminution in the strength of the motive which the insured may have to be vigilant in the care of his property; the substantial diminution of interest in the property insured has been suggested as a test of the kind of transfer or change of title which will avoid the policy."

In *Ayers v. Hartford Fire Insurance Company*, 17 Iowa, 176, the court, in discussing what transfer or change of title would avoid the policy, used the following language : " The object of the insurance company by this clause is, that the interest shall not change so that the assured shall have a greater temptation or motive to burn the property, or less interest or watchfulness in guarding and preserving it from destruction by fire. Any change in or transfer of the interest of the insured in the property of a nature calculated to have this effect is in violation of the policy. But if the real ownership remains the same—if there is no change in the fact of title, but only in the evidence of it, and if this latter change is merely nominal, and not of a nature calculated to increase the motive to burn, or diminish the motive to guard the property from loss by fire,—the policy is not violated. * * * " May on Insurance, § 273.

The evidence as disclosed by the record, so far as it relates to the title, clearly brings the parties to this action within the above rule. We are unable to see how it can be claimed by the company that the change in the title constituted a diminution of the interest on the property insured, or a diminution of the motive which the insured may have had to be vigilant in the care of his property. The title subsequently acquired was the title upon which the company acted when it issued the policy. We think it can fairly be argued that, had the title continued in the four individuals above named, the company might have insisted that the policy was void because of the misrepresentations, unless, as it is claimed, the character of the title was fully made known to the agent

of the company. If it was, then the following rule is applicable.

" If the interest of the assured is incorrectly stated in the policy, through the mistake or wrongful act of the defendant's agent, to whom the application was made, the facts being truly and fully stated to him, and he having authority to take applications, deliver policies and receive premiums, this would be an answer to a plea setting up a breach of the condition as to the statement of the interest and ownership of the assured:" *Brown v. Commercial Fire Ins. Co.*, 86 Ala. 189; *State Ins. Co. v. Taylor*, 14 Colo. 499; *California Ins. Co. v. Gracey*, 15 Colo. 70; *Dupreau v. Hibernia Ins. Co.*, 76 Mich. 615; *Mowry v. Rosendale, Receiver*, 74 N. Y. 361.

" Possession of real or personal property, claiming it as owner, is *prima facie* evidence of title, and all presumptions are made in its support, and if the insurer sets up want of title in the assured, he takes the burden of establishing, not only that the assured had no title in the property, but also, that he had no insurable interest therein." * * * Wood on Fire Insurance, vol. 2, p. 202.

" The issuance of a policy to a person is *prima facie* evidence of his title to the premises, and unless questioned is conclusive." *Fowler v. New York Insurance Company*, 23 Barb. 143.

The evidence does not show that the risk was in any way increased or made more hazardous by the change of title. On the contrary, it shows that the circumstances under which the policy of insurance was issued, the belief and understanding upon which the company acted, were fully perfected, and that the hazard and risk were identically the same as when the party paid his premium and secured his policy. The mere fact that the deed was originally made to the four individuals upon the understanding existing between Wich and the others—that in case they were unable to fulfill the conditions upon which their title rested by paying a certain sum of money—does not take the case out of the operation of the general rule controlling contracts of this kind. The failure

to pay the money would have given Wich an undoubted right of conveyance from them and, as is unusual in such transactions, it seems they recognized their obligation to vest the title in Wich, and did so by a deed making him the sole owner.

The case of *Hough v. City Fire Ins. Co.*, 29 Conn. 10, was one where the legal title to the property was in another party, with whom the insured had, at the time of the application, made a parol contract for its purchase, for a price agreed upon, which the insured had agreed absolutely to pay, and a part of which he had paid, and had entered into possession as purchaser, and made valuable improvements. Upon the claim of the insurance company, in a suit on the policy, that the insurance was void by reason of the omission of the insured to state in his application the condition of the title, the court charged the jury that the plaintiff was to be regarded as the owner of the property, if he had the equitable title, and his interest was such that the *loss should fall upon him* if the property was destroyed. This charge was held to be correct, and the court in its opinion said : " That is to be regarded as an absolute interest, which is so completely vested in the party owning it that he cannot be deprived of it without his consent."

*Gaylord et al. v. Lamar Fire Ins. Co.*, 40 Mo. 16, was a case where no written application was made before the policy was issued. The verbal representation was simply to the effect that the insured were the owners of the property. The court in the course of its opinion said : " An equitable title that would be protected by a court of equity as such, may be an ownership as absolute as the legal title."

In *Elliott v. The Ashland Mut. F. Ins. Co.*, 117 Pa. St. 548, it was said that : " The purchaser of real estate by contract is the equitable owner, and liable to all loss that may befall the property, including loss by fire; wherefore, the holder of such title, for the purpose of insurance, may be said to be vested with the entire unconditional and sole ownership of the property."

It is also insisted that the property was insured by the plaintiff in excess of its valuation, and in excess of the amount based upon such valuation in violation of the policy of insurance. And, also, that the represent tions concerning the watchman in the building and as to the value of the property were false. All these questions were raised by the pleadings and were questions of fact. And we think the universal rule is that : " It is for the jury to say whether the facts concealed or misstated were material to the risk, and the burden is upon the insurer to establish the materiality of the representation and its falsity. If fraud on the part of the assured is set up in avoidance of the policy, the insurer must establish it by competent affirmative proof, as it will be presumed that the assured acted honestly and in good faith, until the contrary is satisfactorily established. In order, however, to avoid a policy upon the ground of misrepresentation on the part of the assured, it is not necessary that a fraudulent purpose or intent, on the part of the assured, should be established. It is enough if the representation was in fact false, and was material to the risk." Wood on Fire Insurance, p. 572–3.

The question as to whether there has been a breach of warranty, or whether certain representations are false in a substantive manner, is wholly for the jury, and their finding, unless clearly contrary to the evidence, cannot be disturbed. *Boos v. The World Mut. Life Ins. Co.*, 64 N. Y. 236.

It is for the jury to say whether or not a misdescription was material to the risk; so as to misrepresentation or concealment, whether there has been a breach of the warranty, and, in a case where the warranty is dependent upon a matter of fact, whether a warranty exists. It is for the jury to say whether there has been a material alteration or increase of the risk, * * * and indeed all questions of fact arising under the issues made are exclusively for the jury, and it is error for the court to trench upon their province. Wood on Fire Insurance, vol. 2, p. 1116–7.

The plaintiff insists that so far as the title was concerned,

full and true representations of the condition of the title were made to the representative of the company. It is true they were not made at the time of the application, but the record as it now stands shows that the application was made and executed after the issuance of the policy and the payment of the premium. What the application may contain, or in what way it may be liable to attack is not now before us, because the application, while it is referred to as a part of the policy, was not introduced in evidence, although an effort was made to that effect by the company. But as to whether these representations are true or not, as to whether the condition of the title was explained or not, is a question of fact and one that should have been submitted to the jury. So, also, the question of the value of the property.

The record clearly discloses a state of facts which entitled the plaintiff to go to the jury.

The judgment must be reversed and the cause remanded for further proceedings.

*Reversed.*