[No. 5912.]

# The Pacific Mutual Life Insurance Company v. Van Fleet.

1. **Appeals—Motion to Strike Bill of Exceptions**—A motion to strike out the bill of exceptions comes too late after the briefs are filed, and the cause noted for argument.—(403)

2. **Bill of Exceptions — Requisites —** The averment that the bill of exceptions contains all the evidence, is sufficient if it appear in the body of the bill itself; it need not be in the certificate of the trial judge.—(403)

3. **——When Necessary**—Complaint of the language of counsel in his address to the jury will not be considered unless the bill of exceptions sets forth the language complained of, the objection thereto, and the ruling upon it. The suggestion that the judge presiding at the trial was absent from the court-room during the argument will not receive attention unless this, also, is made to appear by the bill of exceptions.—(404)

4. **Appeals — Comments of the Court upon the Evidence —** Proper comments upon the evidence made by the court in the presence of the jury, in denying a motion for nonsuit, can not be assigned for error, where no application was made to exclude the jury.—(404)

5. **New Trial—Surprise**—The calling in rebuttal by the successful party of a witness to contradict a witness previously examined in chief for the same party, will not be ground to allow a new trial, where surprise is not alleged at the time.—(405)

——**Newly Discovered Evidence**, which, by diligence, would have come to the knowledge of the party before the trial, will not ground an application for a new trial.—(416)

6. **Evidence — Party Contradicting His Own Witness —** A party may not impeach his own witness, but he may contradict his testimony.—(405)

7. **Instructions—Objections to—**A general exception to the whole of an instruction which contains one sound legal proposition, presents no question upon appeal.—(405)

8. **Insurance—Application Prepared by Agent of the Insured —False Warranty**—The soliciting agent of the insured, in preparing the application for insurance, is regarded as the agent of the insurer, and his knowledge as the knowledge of the insurer. False statements in the application which the agent then knew to be false, cannot be made the ground of a defense to an action on the policy.—(407-411)

(26)

9. —–Application—Incomplete or Evasive Answers—Where the insurer accepts an application containing incomplete and evasive answers to a material question therein set down, it will not be heard to deny liability upon the policy, upon the ground of such incompleteness or evasion.—(411, 412)

10. Accident Insurance—Change of Occupation—A condition in an accident policy avoiding it, or limiting the recovery, in case the assured is "injured or killed while following any occupation, or in any exposure, or performing acts parallel in hazard to the characteristic acts of any occupation classed by this company as more hazardous," etc., is effective only where there is a permanent change of occupation. A recovery is not defeated by the circumstance that the assured is injured or killed in performing some individual act, or exposing himself to some particular risk, of greater hazard than that attending his customary occupation upon which the policy was issued.—(413)

11. Life or Accident Insurance — Attorney's Fee—The statute allowing an attorney's fee to the plaintiff in an action upon a foreign life or accident policy (Laws 1901, ch. 54, sec. 1; Laws 1907, ch. 193, sec. 54; Rev. Stats., sec. 3141) is unconstitutional. —(416)

12. Appeals—Partial Error—An error in allowing attorney's fee to the successful party will not suffice to reverse the judgment. The judgment will be modified, rejecting the improper allowance.—(415)

13. Constitutional Law—Equal Justice—A statute which imposes an attorney's fee upon certain foreign corporations, making no such imposition upon like domestic corporations, is void for this discrimination, and because within the inhibition of sec. art. II of the Constitution.—(415, 416)

14. Cases Overruled, or Explained—The judgment in American Co. v. The People, 34 Colo. 240, sustaining the tax imposed upon foreign corporations by sec. 65 of the Revenue Act of 1902, overruled.—(416)

*Appeal from Denver District Court* — Hon. Frank T. Johnson, Judge.

Messrs. Bicksler, Bennett & Nye, and Mr. George D. Talbot, for appellant.

Mr. Philo B. Tolles, and Mr. Thomas D. Cobbey, for appellee.

Mr. Justice Campbell delivered the opinion of the court:

This is an action to recover on a policy of accident insurance. Plaintiff, the beneficiary and widow of the insured, who met his death as the result of an accident, had judgment, and defendant appealed.

More than two years after the cause was at issue in this court, and after it was noted for oral argument, appellee filed a motion to strike from the files the bill of exceptions, ruling upon which was reserved until final hearing. The principal ground of the motion is that there was no proper showing that the bill contained all of the evidence produced at the trial. This motion is not tenable for two reasons: In the briefs of counsel for both parties the bill of exceptions is treated as complete in this respect. The motion comes too late and the defect, if any, is waived by appellee.—*Reynolds v. Campling*, 21 Colo. 86; *Ritchey v. People*, 23 Colo. 314. Besides, as shown in the supplemental abstract of record, which appellant filed by leave of court, there is a recital in the bill itself that "the above and foregoing is all the evidence offered, given or received on the trial of the * * * cause." Counsel for appellee are mistaken in their contention that this recital must appear in the certificate signed by the judge. Defendant complains that one of plaintiff's counsel, in his address to the jury, went outside of the record and used language calculated to inflame and prejudice the minds of the jury against defendant. We cannot consider this objection. The bill of exceptions does not show that such language was employed or that any ruling was made upon defendant's objection to it:

The latter observation leads to the assignment that while plaintiff's counsel was addressing the jury

the trial judge was out of the court room, where he could neither see nor hear what occurred there, or be seen or heard by its occupants. Defendant says that it was due to such absence that no ruling was had upon its objection to the improper remarks of counsel. There is no showing in the bill of exceptions that the judge was absent. Counsel's mere statement to that effect, or that such absence is made the basis of an assignment of error, is not sufficient proof thereof.

Some objections to the court's ruling upon the evidence were made, that improper testimony was received, and proper testimony offered by defendant excluded. We do not believe that any prejudice could have been done defendant in these rulings. The one urged with the most apparent earnestness is that the court permitted plaintiff to produce evidence which tended to show an offer of compromise by defendant of her claim. There was some testimony that might have such tendency, but it also bore directly upon defendant's knowledge of the alleged false warranty in the insured's application, and was responsive to other issues.

The objection that the court, in the presence of the jury, improperly commented upon the evidence in ruling upon defendant's motion for a nonsuit, is wholly without merit. Defendant challenged the sufficiency of the proof, and the court, in passing upon that contention, was entirely within its province in stating its reasons for submitting the evidence to the jury for their finding. If counsel wished an order excluding the jury from the court room during the announcement by the court of its opinion on the motion, it should have asked for it, and, in the absence of such request, cannot be heard now to complain that the court's comments on the evidence were harmful.

Defendant alleges that, to its prejudice, it was

a surprise that plaintiff on rebuttal produced a witness who testified with reference to what occurred at the time the soliciting agent wrote out the application for the insured, which was contrary to what the soliciting agent himself, in a deposition taken by plaintiff, had testified. A party who calls a witness may not directly impeach him, yet he is not precluded from producing other witnesses whose testimony is contradictory. The order of proof is largely in the discretion of the trial court, and since defendant did not, at the time the testimony was being given, allege surprise, or ask for a continuance to meet the unexpected evidence, he is not entitled to a new trial in order to produce it.

The abstract of the record does not show that defendant objected to the refusal of the court to give the instructions tendered by it. And the objections which defendant made to the instructions which the court gave are not in accordance with our practice. The abstract indicates that five instructions were given. It does not show that any objection whatever was made thereto, further than a notation that defendant's counsel excepted to the giving of these five instructions and each of them. It appears that each one of these instructions contains some one or more correct legal propositions. The exception taken, therefore, cannot be now considered. This failure, however, to conform to our practice, is not important, since defendant, by the two principal defenses interposed in the answer, on which there was evidence, is in position to be heard upon the vital legal questions in the case, and to these now we address ourselves:

The first defense is a breach of warranty; the second, a harmful change of occupation by the insured. Defendant's agent, who had power to solicit insurance, and to prepare and transmit applications therefor, in response to information imparted by

the insured and from facts within his own knowledge, filled in the blanks of the printed form of application for insurance furnished by defendant, and sent it to his principal. It is said this application, which the insured expressly warranted to be true in all its statements, was false. In response to a printed question in the application, answer 18 of the insured is: "I have never received or been refused compensation for accidental injuries or sickness, except as herein stated," whereas the proof is that the insured previously had been insured in a mutual benefit association, had been injured, and received compensation for the injury. Defendant's contention is that, under the express provision of the policy, of which the application, by reference, was made a part, this warranty or answer being false, the policy is void and no recovery can be had. It is true that the policy contains this provision, and also another that "no alteration or waiver of the conditions or provisions of any policy is valid unless made in writing at the Company's Home Office, and signed by the Secretary or Assistant Secretary, and that no notice to or knowledge of any agent or any other person of anything not written in this application is to be held to affect a waiver or estoppel upon the company or affect any provision of any policy." The defendant's position is that with such provisions present, the law is, as it says was so declared in *New York Life Insurance Company v. Fletcher*, 117 U. S. 519, and *Sun Fire Office v. Wich*, 6 Col. App. 103, upon which reliance is had here, this policy is void at the election of the insurer. The *Fletcher case* is cited with approval by our court of appeals in the *Wich case*. The facts of these cases may be, in one or two important particulars, distinguished from the facts of the case at bar. But whatever may be said of their doctrine, we do not think they are controlling under the facts of

this case, and we cannot apply their doctrine. Defendant's soliciting agent was entrusted with blank applications for insurance, and approached the insured to take out a policy. He took it upon himself, which perhaps he was not required to do, to fill in the application. He himself, then, and long before, was informed by the insured, and knew that the latter had previously been insured and had received compensation for an injury. Notwithstanding which, the agent, in answer to question 18, wrote in the application the false answer already quoted.

Some of the authorities hold that a question in an application as to whether the applicant has his life insured in, or has received compensation for an injury from, any other company, does not include insurance in mutual benefit associations, and that a failure to disclose such insurance is not a misrepresentation.—*Penn Mutual Life Ins. Co. v. Mechanics', etc., Trust Co.,* 72 Fed. 413. And it may be that both the insured and the agent had this distinction in mind at the time the answer was written. Upon such distinction, however, we do not base our decision that the company is now estopped to declare the policy void. Assuming, for the present purpose, that it is equivalent to an answer that no compensation had ever been received for an injury sustained, it would seem that decisions of the supreme court of the United States of later date than the *Fletcher case,* and certainly our own decisions, make the soliciting agent the representative of the insurer when he makes out the application himself, and his knowledge the knowledge of the defendant, and estop the company to declare the policy void because of the mistake or fraud of its agent.

In *German Insurance Co. v. Hayden,* 21 Colo. 127, the application for the insurance, as here, was in writing and signed by the assured. There, as

here, it was expressly agreed by the applicant that the statements therein ''shall be the sole basis of the contract between the company and the insured,'' and the answers to all the questions in the application were warranted to be true. In answer to the question, ''What is your title?'' the answer was ''Good.'' The policy contained a stipulation that if the insured's ownership was less than a fee, unless such smaller estate was stated in writing, the policy should be void. The fact was that the applicant's title was not good and it was also true that her answer as to an incumbrance upon the property was false. Bearing upon this question, the court, however, said that since it was clear that this part of the application was filled out by an agent of defendant company, and that the agent was at the time correctly informed as to the amount of the incumbrance, and that the error in the application occurred as the result of his negligence and through no fault of the assured, though the latter signed the application, the fact that the insured had made the true statement to the agent at the time, but that the latter, without the assured's knowledge, had written down a false answer in the printed form, would estop the company to take advantage of the falsity of the answer. That would seem to govern this case, and *State Insurance Company v. Taylor,* 14 Colo. 499, is cited in support. In the *Taylor case* the facts were that the application which was forwarded by the agent was held to be the act of the insurer, for which it alone was responsible, and that the insurer is estopped to set up any false statements so made and contained in the application, to defeat a recovery. In *National M. F. Insurance Company v. Duncan,* 44 Colo. 472, at p. 486, the court, in speaking of a false statement in an application for insurance concerning title, said that as it appeared the agent of the company had full knowledge thereof,

"and, having issued the policy with such knowledge, the condition therein avoiding the policy if the title to the property insured was not as represented, was waived." In *American Insurance Company v. Donlon,* 16 Col. App. 416, the court expressly decided that an insurance company waived the condition in the policy requiring ownership in fee of the land upon which an insured building was situate—though the applicant for the insurance had answered that his title was good, when the fact was that it was not good—because there was sufficient evidence to go to the jury that the insured informed the agent of the condition of his true title before the policy was written. *Strauss v. The Phoenix Insurance Company,* 9 Col. App. 386, is to the same effect, the court saying that it was no defense for an insurance company to show that another policy was outstanding, notwithstanding the condition contained in the contract of insurance that the policy was to be void in case the party had, or should procure, other insurance, when as matter of fact, prior to the issuance of the policy, the agent, and therefore the company, were fully advised as to the existence of other outstanding insurance. In *State Insurance Company v. Du Bois,* 7 Col. App. 214, in an opinion by Judge Reed, who wrote the opinion in the *Wich case, supra,* it was said: "A statement in an application for insurance * * * that the title was in the applicant and by warranty deed, when in truth it was in him and another by will, is not available as a defense to an action on the policy where it appears that the applicant disclosed all the facts to the soliciting agent of the company, by whom the misstatement was written" in the policy, though the same was signed by the applicant. In *Continental Insurance Company v. Chamberlain,* 132 U. S. 304—which, if inconsistent with the doctrine announced in the *Fletcher case* in

117 U. S., *supra,* would, as the later pronouncement, be controlling—the court, by Mr. Justice Harlan, said that the soliciting agent was the agent of the company, and if he filled out an application, which he was not bound to do, or made representations or gave advice as to the character of the answers to be given by the applicant, his acts were the acts of the insurer, and the latter could not void the policy for a breach of the alleged warranties or representations therein contained. It is true that the court based its decision, in part at least, upon a statute of the state of Iowa in the light of which the contract of insurance was construed, declaring a soliciting agent to be the agent of the insurer in making out and transmitting applications. Nevertheless, the reasoning of the court upon general principles, as we believe, would make such an agent the representative of the insurer to the extent that his acts, in filling in the blanks, would be binding on his company.—*Insurance Company v. Wilkinson,* 13 Wall. 222, 235, 236. But it is said that a still later case, *Northern Assurance Co. v. Grand View Building Association,* 183 U. S. 308, in effect overrules the *Chamberlain case* and reinstates the doctrine of the *Fletcher case.* It would serve no useful purpose to attempt an analysis of these various opinions, and it is enough to say that the supreme court itself did not assume therein to refer to, or overrule, the *Chamberlain case,* and we cannot presume that such was its intention, particularly as, at the same term, in *McMaster v. New York Life Insurance Co.,* 183 U. S. 25, the *Chamberlain case* is referred to with approval. In a recent case, *Sternaman v. Metropolitan Life Ins. Co.,* 170 N. Y. 13, 57 L. R. A. 318, the doctrine of the *Chamberlain case* is followed, and the *Fletcher case,* if inconsistent, disregarded, although the *Northern Insurance Co. case* had then been handed down and was before the

court. The U. S. circuit court of appeals of the second circuit, in *Carrollton Furniture Co. v. American Credit Indemnity Co.,* 124 Fed. 25, in commenting on all three of these federal cases, followed the doctrine of the *Chamberlain case,* apparently considering it as authority, on general principles of law, for holding a soliciting agent as the representative of the insurer, and distinguished it both from the *Fletcher* and the *Northern Assurance Company cases.*

The facts of the present case being so nearly like those in the *Chamberlain* and the *Wilkinson cases, supra,* and the doctrine which we have applied here being in harmony with our own previous decisions, we do not hesitate to say, as applicable to the facts of the case at bar, that, since the assured correctly answered question 18, and the soliciting agent had knowledge that the applicant had received compensation for an injury, but did not put down the answer as given, but wrote a different one, even though the assured signed the application and is presumed to have read it, the wrong, if any committed, was that of the authorized agent of the insurer, and so the wrong of the insurer itself, and the latter cannot be heard to insist upon its right to declare void the policy on the ground of the alleged breach of warranty.

From another point of view, also, this alleged improper answer cannot be allowed to defeat the policy. In what we have already said we have assumed, with defendant, that this answer is equivalent to a statement by the assured that he had never received compensation from an insurance company for an injury. The alleged false answer on its face is imperfect and incomplete. It suggests that compensation might have been received. The defendant received the application with this incomplete and imperfect answer in it, took the applicant's premium

money and issued the policy. Had it been dissatisfied with this answer, it should have withheld the policy until a more perfect and complete one had been given. Such being the case, it seems to be the general rule that the insurer cannot avoid the policy on the ground of any inaccuracy or incompleteness of such an answer.—2 Bacon Benefit Societies and Life Insurance, § 427; 1 Bacon, § 204 *et seq.; Manhattan Ins. Co. v. Willis & Bro. et al.,* 60 Fed. Rep. 236; *Phoenix Life Ins. Co. v. Raddin,* 120 U. S. 183, where Mr. Justice Gray, in an elaborate opinion collects the authorities and comments upon them, and sums up by saying "* * * where upon the face of the application a question appears to be not answered at all, or to be imperfectly answered, and the insurers issue a policy without further inquiry, they waive the want or imperfection in the answer, and render the omission to answer more fully immaterial."—*Triple Link Association v. Froebe,* 90 Ill. App. 299.

The defense that deceased changed his occupation and thereby, under the provisions of the policy, violated his contract, is pleaded, not as a bar to the action, but only in diminution of the amount of the recovery. Deceased in response to an appropriate question answered that his occupation was railroad brakeman. The fact is that he was killed while making an ascension in a balloon. Defendant asserts that in so doing he was following the occupation of an aeronaut, which, under the classification made by the company's rate book, was a more hazardous one than that of a railroad brakeman. The policy contains this provision: "Should the insured be injured or killed while following any occupation or in any exposure or performing acts parallel in hazard to the characteristic acts of any occupation classed by

the company as more hazardous than is specified in the application for this policy, the principal sum and weekly indemnity shall be for such amount as the premiums paid will purchase at the rates fixed for such more hazardous occupation." It is upon this provision that defendant's contention rests, and counsel say that if any recovery at all can be had, it should be on the basis of the insured's pursuing the occupation of an aeronaut, which, according to its classification, would entitle plaintiff to recover, if anything, a sum not in excess of $333.33. Clauses like the one quoted have been before the courts for consideration, and, so far as we are advised, the uniform holding is, where, as here, the only classification made by the insurance company is of occupations, and not of particular acts or exposures, a change of occupation, such as will defeat the policy, must be a permanent change, or a temporary change which, in all substantial respects, for the time being is a change of occupation, and that the policy is not defeated by the performance of some individual act, or indulging or engaging in some particular exposure, which is of a more hazardous nature than that attending the fixed occupation given by the insured upon which the insurance was effected. In *Union Mutual Accident Association v. Frohard*, 25 N. E. (Ill.) 642, where the by-law was substantially the same as here, the ruling of the court was as we have stated. Other cases to the same effect are *Holliday v. A. M. A. Ass'n*, 103 Iowa 178; *N. A. L. and A. Ins. Co. v. Burroughs*, 69 Pa. St. 43; *Hall v. A. M. A. Ass'n*, 86 Wis. 518; *Comstock v. F. A. Ass'n*, 116 Wis. 382; *Pac. M. L. Ins. Co. v. Snowden*, 58 Fed. Rep. 342. There was no evidence that the deceased, after the policy was issued, made an ascension in a balloon more than the one time, when he was fatally injured,

or that he received compensation for that. The defendant's soliciting agent knew at the time the application was made that the assured had theretofore engaged in this amusement and would likely so indulge himself in the future, and was told by the assured that he wished a policy that would protect him in case he was injured in so doing, and the agent, who produced his rate book, told him that occasional ascensions in a balloon by way of amusement or pleasure would not avoid the policy, and that he was justified, under the rate book, in classifying the risk as that of a railroad brakeman, and that it was only in case the insured should permanently change his occupation to that of an aeronaut that the policy would be avoided. It may be that, under the doctrine announced by some cases, where, as here, the soliciting agent is authorized by his company in taking such applications to classify the risk, that his construction of the contents of the company's rate book, as to the character of the risk in question, is binding upon his company; but we do not have to go to that extent in this case, for, under the authorities cited, there was no such change in the occupation by insured as to avoid the policy.

In this connection it is proper to consider another objection of defendant—that the court erred in denying its motion for a new trial based upon newly discovered evidence. The accompanying affidavits state that after the trial defendant discovered witnesses who, if sworn and produced, would testify that the insured had repeatedly, after the policy was issued, made balloon ascensions for hire, and that in so doing he intended permanently to change his occupation. The showing made is insufficient to justify the granting of a new trial, and the court did not commit error in its ruling. The record shows that de-

fendant produced evidence as to one ascension in a
balloon by the insured at the fair grounds in Grand
Junction, this state, after the policy was written, and,
by diligent inquiry, might then have ascertained, as
well as after the trial was finished, that compensation
was paid therefor, and that other ascensions were
made.   Proper diligence to secure this evidence be-
fore the trial was not established by the affidavits,
and in other respects not necessary to mention, the
showing was insufficient.

The court allowed to plaintiff five hundred dol-
lars as attorney's fees under the authority of sec. 1,
ch. 54, of the Laws of 1901, p. 127, which provides:

"Any foreign life or accident insurance company
that contests any claim for insurance, and has judg-
ment rendered against it, shall be taxed with all
costs, including an attorney's fee for the attorney for
the successful party, such fees to be fixed by the court
before whom the case was tried."

Defendant assigns this award as error upon the
ground that the statute is unconstitutional.   In
*Davidson v. Jennings,* 27 Colo. 187, a like provision
in our mechanic's lien act was held to be unconstitu-
tional, being in contravention of sec. 6 of our bill of
rights, since it discriminates in favor of a plaintiff
against a defendant, the latter not being entitled
thereunder to a like privilege in case he succeeds in
defeating the action.   This decision was approved in
*Campbell v. Los Angeles Gold Mine Company,* 28
Colo. 256, and again in *Antlers Park Company v.
Cunningham,* 29 Colo. 284.   A like decision was also
made by our court of appeals in several cases:   *The
Los Angeles Gold Mine Co. v. Campbell,* 13 Col. App.
1; *The Burleigh Bldg. Co. et al. v. The Merchant
Brick and Bldg. Co.,* 13 Col. App. 455-466; *Perkins
v. Boyd,* 16 Col. App. 266-270.   Plaintiff cites in

support of the validity of this statute some cases from Texas, which were approved by the supreme court of the United States, holding a similar statute valid. These decisions in the federal court are not controlling with us. The federal courts merely accept the meaning of the state statute, as interpreted by the state court, and follow the decisions of the latter as to whether it violates the state constitution. Plaintiff, however, cites the case of the *American Smelting Company v. Colorado ex rel. Lindsley,* 34 Colo. 240, as a case which, in principle, upholds this law. If it have that effect, it was overruled by the supreme court of the United States in 204 U. S. 103. This latter decision would clearly make this law invalid, in that it discriminates against a foreign life or accident insurance company and in favor of a domestic corporation of the same class. It would be clearly unconstitutional for that reason, and it also falls within the inhibition of sec. 6 of the bill of rights, as decided in the *Davidson* and other cases, *supra.* This error, in taxing attorney's fees as part of the costs, is not sufficient to cause a reversal of the judgment. Five hundred dollars will have to be deducted from the amount as rendered.

A careful examination of the record showing that no prejudicial error, other than the one just mentioned, was committed by the trial court, its judgment, with the modification indicated, will be affirmed and the cause remanded to the district court with instructions to vacate its former judgment and render another judgment in favor of plaintiff, as of the same date, and in a sum five hundred dollars less than that one.        *Modified and, as modified, affirmed, and cause remanded.*

Decision *en banc.*    All the justices concurring.