[No. 6414.]

## MERCHANTS' MUTUAL FIRE INSURANCE COMPANY v. HARRIS ET AL.

1. APPEAL—*Findings on Sufficient Evidence*, are conclusive on appeal—(102).

2. EQUITY—*Reformation of Writing—Insurance Policy*—Harris, managing an establishment known as "The EXPOSITION," applied for insurance upon the merchandise and fixtures therein, the property of one Arkush, as well as upon certain household goods therein, his individual property. Under the instructions of the insurer's agent he made a single application in the name of "The EXPOSITION, Ernest Harris, Mngr.," specifying the goods insured, the insurance on each, but not alluding to the separate ownership. This application being forwarded, by the agent, without explanation, the policy was issued to Harris, describing both his goods and those of Arkush. Harris being unfamiliar with business and business forms, accepted the policy with only a casual examination of it, and paid the premium. In framing the policy the company inserted the name of Harris as the insured, deliberately, and of set purpose, because under its by-laws, it was required that only individuals could be insured, who thereby became members. *Held,* that nevertheless, giving the policies this frame must be deemed a mutual mistake, repug-

namt to the real intent of the parties, to-wit, the indemnification of both Harris and Arkush against loss upon their separate individual properties, and that equity might reform the policy so as to make is express the real intent—(103, 104).

3. INSURANCE—*Soliciting Agent Represents Insurer*—The agent of an insurance company preparing an application for insurance represents the insured, and the knowledge which he acquires in the premises is the knowledge of the company—(106).

4. ——*Title of Insured*—Where chattels owned in severalty by two parties, are, upon application by one of them, insured as the property of that one alone, and are at the time under mortgage, of which no mention is made in the application or policy, but the agent of the insurer has at the time explicit information of the separate ownership of the chattels, the policy is not avoided, even though it expressly provides that it shall be void, "if the interest of the insured be other than unconditional and sole ownership * * * or be or become encumbered by chattel mortgage"—(109).

5. ——*Application—Question not Answered*—Where one of the questions set down in the printed form of application for insurance is not answered, or is answered imperfectly, it is the duty of the insurer, if more specific information is desired, to apply for it before issuing the policy. The acceptance of such imperfect application, and issuing the policy, is a waiver of the imperfection—(112).

6. ——*Condition against Encumbrance*, applicable to the insured property as an entirety, is not broken by the encumbrance of a part only—(112).

7. ——*Conditions Known to Agent*, and by which the policy is made void from the beginning, are waived, when the state of facts leading to this result is known to the soliciting agent at the time of accepting the application—(113).

8. ESTOPPEL—*By Conduct*—One who in applying for insurance makes full and truthful disclosure of the state of the title of the property insured, and in framing the application acts under the directions of the soliciting agent of the insurer, and afterwards accepts the policy transmitted to him, and pays the premium thereon, is not estopped to demand a reformation of the policy, where in fact, it fails to conform to the application in respects which did not attract his attention, upon receiving it—(114).

*Appeal from Denver District Court*—Hon. HUBERT D. SHATTUCK, Judge.

Mr. R. E. STEVENS, for appellant.

Mr. GEORGE ALLAN SMITH, for appellee.

Mr. JUSTICE BAILEY delivered the opinion of the court:

Plaintiffs sue for reformation of a certain contract of insurance, and for recovery of $2,000,000 for loss of, and damage to, property covered thereby, at the city of Boulder, Colorado. The policy was written in favor of the plaintiff, Ernest Harris, individually, on the 13th day of June, 1906, for one year, the premium being $24.40. The fire occurred July 26th next after the issuance of the policy. It is claimed that $1,200.00 of the insurance was on property belonging to Sol Arkush, one of the plaintiffs, and the balance, $800.00, on property of the other plaintiff, Harris. It was sought in the suit to reform the policy to make it speak the truth, touching ownership, according to the alleged facts. Plaintiffs had judgment for $2,-000.00, the amount of the policy, and a decree for its reformation as prayed. The defendant brings the case here to review that judgment and decree.

A complete understanding of the facts disclosed at the trial, and generally of the issues involved, can best be had by setting forth at length the findings of the trial court. These findings evidence the utmost care in the disposition of the case, and show that the matter was adjudged only after full consideration of both law and fact questions. The statement of findings, as it appears in the record, follows:

"And the court having read the pleadings and heard all of the evidence presented and the arguments of counsel, and being now fully advised in the premises, doth find the issues in this cause for the plaintiffs, and doth further and specifically find the following facts:—

That the defendant company was, on June 13th, 1906, and now is an insurance corporation, organized under the laws of the state of Colorado and carrying on the business of fire insurance in said state; that on June 13th, 1906, the plaintiff, Sol Arkush, was the owner of a certain stock of goods and store furniture and fixtures, described in the application and policy of insurance hereinafter mentioned and which were situated in the store building at No. 928 Pearl street in the city of Boulder, and continued to be the owner thereof until after the fire at said building on July 26th, 1906; that the plaintiff, Ernest Harris, was in charge thereof as the agent of Arkush, and that at said times the plaintiff Ernest Harris was the owner of certain household furniture and goods which he had in the back part of said store room, which he occupied also as a living room; that said place was known as "The Exposition," and the business therein conducted was in the name of "The Exposition."

The court doth further find that on June 13th, 1906, W. J. King was an agent of the defendant company employed and authorized by it to travel about the state of Colorado to solicit and procure for it applications for fire insurance, and was furnished by the defendant with certain printed blank applications for insurance in the defendant company; that it was part of his duty, after procuring the same to be signed by applicants for insurance, to forward such application to the defendant company filling the same out with such other information as he might be able to obtain himself about the proposed risk in addition to that which he obtained from the applicant; that on June 13th, 1906, said King visited The Exposition, and solicited the plaintiffs, through the plaintiff Harris, to take out fire insurance on the aforesaid property; that King filled in answers to only part of the questions printed on the face of the application, and

procured the plaintiff Harris to sign the same in the name of "The Exposition by E. Harris, Mngr."; that King at the time was fully and truly informed by Harris as to the diversity of ownership of the property, and of a certain chattel mortgage to Selchow and Righter, hereinafter mentioned, and the condition thereof; that King stated to Harris that the application signed in the name of "The Exposition by E. Harris, Mngr." was the proper way to make application for a policy of fire insurance in the defendant company to cover the property of both plaintiffs on said premises, and that the application thus signed was in correct form and the defendant would issue a proper policy thereon which would insure both of the plaintiffs to the extent applied for in said application.

The court doth further find that King forwarded said application to the defendant company, who received and accepted the same and thereupon, and without consultation with plaintiffs, or notifying plaintiffs or either of them, that the application was in any way incorrect, issued to them its policy of fire insurance, covering the property described in the application, as follows, to wit:

Two hundred dollars ($200) on the store furniture and fixtures,

One thousand dollars ($1000) on the stock of merchandise, and

Eight hundred dollars ($800) on the household furniture and goods; that the defendant company, in writing the policy, ignored the application as to the name "The Exposition," and issued the policy in the name of Ernest Harris instead of "The Exposition"; that the policy was then mailed by defendant to the plaintiff Harris, who was unfamiliar with insurance law or the provisions of insurance policies, and who, upon receiving the policy, examined the same but cas-

ually, and observing that the property and amounts of insurance applied for were all right, believed that the policy was correct and that it insured himself and Arkush in the amounts and on the property therein described, and thereupon sent the defendant company the premium for said policy, and that plaintiff retained said policy under such belief.

The court doth further find that on July 26th, 1906, a fire occurred at the store without fault on the part of the plaintiffs, and by reason thereof, the plaintiff Sol Arkush suffered a direct loss and damage to the store furniture and fixtures in excess of the sum of two hundred dollars ($200) and to the stock of merchandise in excess of the sum of one thousand dollars ($1000); and the plaintiff Ernest Harris suffered a direct loss and damage to the household furniture and goods in excess of the sum of eight hundred dollars ($800); that notice of the fire and loss was sent to the company, and in response thereto, and within a day or two, J. R. Gardner, manager of the defendant company, visited the burned premises, asked who owned the property and was informed that Sol Arkush owned the store furniture and fixtures and stock of merchandise, and that Ernest Harris owned the household furniture and goods: that he thereupon asked for the policy, which was produced, whereupon he refused to adjust the loss, stating as his reason that the policy was in the name of Harris; that on August 8th, 1906, the defendant company wrote to Harris denying all liability on said policy on the alleged ground that Sol Arkush was the owner of the property described in the policy, and enclosed a check payable to Ernest Harris for the amount of the premium theretofore paid, which the plaintiff Harris refused to accept, and which he later caused to be returned to the company.

The court doth further find that the Selchow and

Righter mortgage covered but a part of the property insured, and that Harris informed the agent, King, of the existence of the mortgage at the time the application for insurance was signed, and the amount that was still unpaid and secured thereby; and that it was due to the act and advice of the agent, King, that the question as to incumbrances contained in the application, instead of being answered affirmatively, was left blank, as were a number of other questions which were contained in said application.

The court further finds that no misrepresentations were made, or concealments practiced, either in the application or otherwise, by the plaintiffs, or either of them, and that the conduct of the plaintiffs toward the defendant was fair and in good faith, and that no evidence was presented in the case to warrant the serious charge made in the pleadings of the defendant that the fire was the result of the malicious and willful act of the plaintiff, Ernest Harris; that there was nothing in the case to show that the fire occurred other than as the result of unknown accidental circumstances.

The court doth further find that the law and equities of this case are with the plaintiffs; that the defendant company, after having received the plaintiffs' application, issued its policy of insurance and received the premium therefor, ought not, after a loss has occurred, be permitted to escape liability on the plea that owing to its own mistake the policy was not issued in the proper names of the assured, especially when its agent who solicited the insurance was fully informed as to the facts at the time the application was signed, and advised that it be signed as it was, and when the company without cause disregarded the application and wrote the policy in the name of but one of the assured.

The claim that the Selchow and Righter mortgage

avoided the policy does not appeal to the court. Under the circumstances of this case, it is a technical defense without a meritorious reason in its support, for the evidence is uncontroverted that it was satisfied long before the fire occurred; also the agent of the company was informed of its existence and the amount due thereon at the time of the application, which was less than one hundred dollars ($100), and no representation in reference thereto was made to the defendant company in the written application.

The court therefore holds that as the mortgage covered but a part of the property insured, and as no representations were made as to the mortgage in the written application, and that the defendant company through its agent King had full knowledge of the same, it is not now in a position to avoid its contract of insurance because thereof."

These findings are supported by abundant competent testimony, and, upon authority of previous decisions of this court almost without number, are conclusive here, so far as the facts of the case are concerned, and must be so accepted in determining the propriety of the judgment now under review. They compel an affirmance thereof, unless the defendant was entitled to a different and more favorable judgment, as matter of law, upon these findings, by which this court is bound.

The main questions of law fairly raised by the record are:

First.   Could the contract of insurance be lawfully reformed to fit the facts as found;

Second.   Do the facts that the ownership was not sole and unconditional, and that there was an outstanding chattel mortgage on a portion of the insured property, avoid the policy; and,

Third.   Are the plaintiffs, because of the conduct of Harris in receiving and retaining, without objection, the policy as written, estopped to deny that it correctly

shows the persons for whom the indemnity was sought, intended and in fact given.

We are unable to discover any good reason why the contract should not be reformed to give protection to those whom it was intended to protect. The court found, and the proofs show, that the company's agent King had explicit information that certain of the goods to be insured, under the application of "The Exposition," belonged to Harris and certain others to Arkush. Harris was advised by the agent that it was proper to insure them under the designation used, and that by so doing the actual owners, as their respective interests might appear, would be fully protected. Although the application was in the name of "The Exposition, by Ernest Harris, Manager," the insurance company, on its own motion, without inquiry or investigation, wrote the policy in favor of Ernest Harris, individually, and delivered it to him. We are of opinion that such action was, under the circumstances, in effect a writing of the policy in favor of "The Exposition," and that had the policy been actually so written, the real owners might have recovered upon it, according to their respective losses. Why should reformation of the contract to show the facts, so as to permit recovery upon it by the real owners, who paid for the policy and by whom indemnity was sought and for whom it was intended, be refused? It seems that, because the company is a mutual one, under its by-laws policies should run to individuals only, who alone, it is claimed, can become members, and apparently for this reason, and this reason alone, the policy was written in the name of Ernest Harris, individually, instead of "The Exposition," as applied for. There is no room to doubt that the company intended to write this policy so as to be effective, under the application, and to give indemnity as thereby sought. It is doubtless true, as testified by Gardner, the com-

pany's manager, that the policy was intentionally written in favor of Ernest Harris, but notwithstanding this the legal effect to be given the policy is indicated by the application itself, and the knowledge imparted to Harris by the soliciting agent, which was the knowledge of the company. It ought not now to be permitted to say that indemnity was intended exclusively for Harris, it being clear that had the policy been written to "The Exposition" those owning the property insured might have recovered upon it. In other words, the policy must be given effect according to the plain intent of the parties, as disclosed by the application, and the terms of the policy itself, viewed in the light of the facts imparted to the agent respecting ownership. To hold otherwise, under the facts of this case, would be to put the company in the most unenviable position of having advance knowledge, that in case of loss the policy could be defeated upon technical grounds, and in event of no loss the premium might be retained, an attitude which the company certainly never intended to assume.

The record clearly establishes a mutual mistake as to the effect of the policy as written. It is obvious that the company intended that the policy should give protection to the actual owners, and it had no purpose to do otherwise, when it substituted Harris, as the insured, in the place of "The Exposition." It is also equally clear that Harris, in accepting this policy, believed that the real owners were protected, in conformity with the assurance of the company's soliciting agent.

We have before us, therefore, a contract which, through mistake, does not fully express the true purpose of the parties. It was definitely understood that the policy to be issued would protect the owners from loss in case of fire. The application was made in the name of "The Exposition," but with full notice to

the company, through its agent King, as to the diversity of ownership. This is shown by direct testimony, which leaves no doubt as to the intention and understanding of the parties. In attempting to embody this understanding in the contract, by mistake on the part of the company, which now seeks to avoid the policy, the written agreement did not effect that which it was understood between the parties would be accomplished. That a court of equity should in such case furnish relief is, we think, well settled.

In the case of *Thompson v. Phenix Ins. Co.*, 136 U. S., page 287, it was said:

"If, by inadvertence, accident or mistake, the terms of the contract were not fully set forth in the policy, the plaintiff is entitled to have it reformed, so as to express the real agreement, without the necessity of resorting to extrinsic proof."

In *Snell v. Insurance Co.*, 98 U. S., page 85, it is said:

"It would be a serious defect in the jurisdiction of courts of equity if they did not have the power to grant relief against mutual mistakes or fraud in the execution of written instruments."

To the same point we cite: *Graves v. Insurance Co.*, 2 Cranch, 419; *Insurance Co. v. Wilkinson*, 13 Wallace, 222; and *Woodbury Savings Bank, etc., v. Insurance Co.*, 31 Conn. 517.

The case of *State Insurance Co. v. DuBois, et al.*, 7 Colo. App. 214, goes further in upholding and enforcing a policy, over similar objections, based on like reasons, now urged and relied upon; than it is necessary to go to sustain the judgment under review. The policy there was issued to Bradford H. DuBois, individually, upon property owned by himself and brother, Jacob DuBois. There the title was said, by answer in the application, to be solely and unconditionally in Bradford DuBois by warranty deed, when as matter

of fact it was owned jointly by the two brothers, by will. In a suit upon that policy by the brothers jointly, recovery was upheld, without even a reformation of the contract, upon the theory that they had a right to show their respective interests in the property destroyed, and to recover accordingly, as the diversity of ownership and nature of title had been fully stated to the soliciting agent.

To the point that the soliciting agent, in preparing an application for insurance, is regarded as the agent of the insurer, and that his knowledge is the knowledge of the insurer, we cite: *Pacific Mutual Life Ins. Co. v. Van Fleet*, 47 Colo. 401; *State Insurance Co. v. Taylor*, 14 Colo. 499; *State Insurance Co. v. DuBois, et al., supra; American Insurance Co. v. Donlon*, 16 Colo. App. 416; *Strauss v. Phenix Insurance Co.*, 9 Colo. App. 386; *Insurance Co. v. Chamberlain*, 132 U. S. 304; *Insurance Co. v. Wilkinson, supra; McMaster v. New York Life Ins. Co.*, 183 U. S. 25; *Sternaman v. Life Insurance Co.*, 170 N. Y. 13; *Schollay v. Drug Co.*, 17 Colo. App. 126; *Higgins v. Armstrong*, 9 Colo. 38; *Hummel v. First Nat. Bank*, 2 Colo. App. 571; and *Messenger v. German American Ins. Co.*, 47 Colo. 448.

Story on Agency, 9th ed., section 140, upon this question, has this to say:

"Notice of facts to an agent is constructive notice thereof to the principal himself, where it arises from, or is at the time connected with, the subject-matter of his agency; for, upon general principles of public policy, it is presumed that the agent has communicated such facts to the principal; and if he has not, still the principal, having entrusted the agent with the particular business, the other party has a right to deem his acts and knowledge obligatory upon the principal; otherwise, the neglect of the agent, whether designed or undesigned, might operate most injurious-

ly to the rights and interests of such party."

To the same point Vance on Insurance, at page 304, says:

"A second incident of the relation of principal and agent is that any information material to the transaction either possessed by the agent at the time of the transaction, or acquired by him before its completion, is deemed to be the knowledge of the principal, at least as far as that transaction is concerned, even though in fact the knowledge is not communicated to the principal at all.

It is here to be observed—and the importance of the principle is so great that it cannot be too strongly emphasized—that these incidents of agency are created by the law and not by the parties. The insurer is charged with the knowledge acquired by his agent in making or negotiating a contract of insurance, not because he has consented to be so charged, nor because he has authorized his agent to so bind him, but because, as a legal consequence of the relation he sustains to the agent, the latter's knowledge is imputed to him. It therefore follows that this incident created by the law in response to the demands of public policy, irrespective of agreement, cannot be destroyed or altered by the agreement of the parties. The parties cannot by their contract contravene the policy of the law in this instance any more than the husband by contract can escape his duty to support the wife, or the carrier can by contract exempt himself from liability for his negligent failure to carry safely his passenger. Those cases which ignore this principle, and regard these legal incidents as powers conferred and subject to limitation, are much to be deplored. Insurers should undoubtedly be allowed to protect themselves, in any legal way possible, against the fraud of their unfaithful agents, but not at the expense of innocent third parties. And when a loss caused by a

dishonest agent must fall upon his principal or a third party, both equally innocent, the courts should not, and do not, ordinarily, hesitate in putting the burden upon the person who selected and controlled the agent."

To a similar proposition, we quote from the syllabus to the opinion of this court in *State Insurance Co. v. Taylor, supra,* as follows:

"Contracts of insurance are to be considered and construed by the same rules of law and of interpretation as other contracts, in order to carry out the intention of both parties. Consequently the employment by an insurance company of an agent to solicit, receive and forward to the company applications for insurance, to receive and forward policies, and to collect the premiums, makes him the agent of the company for the performance of these duties."

We come now to a consideration of the second question, as to the effect of the answer as to title, and the existence of the chattel mortgage.

The policy contained this provision:

"The entire policy, unless otherwise provided by agreement endorsed hereon or added hereto, shall be void * * * if the interest of the insured be other than unconditional and sole ownership; * * * or if the subject of insurance be personal property and be or become incumbered by chattel mortgage."

No agreement was indorsed on the policy waiving these conditions, and there was a chattel mortgage on the property when the insurance was applied for and the policy written. The answer to the question as to ownership was that it was sole and unconditional. The court specifically found that the mortgage in question covered only a portion of the insured property; that it was fully satisfied long before the fire occurred; that the agent of the company was truthfully informed of its existence and the amount

due thereon; that the answer in the application referring thereto was left unanswered, upon the advice of the soliciting agent; that the diversity of ownership was explicitly set forth and made known to the company's soliciting agent; that the soliciting agent told Harris that the application in the name of "The Exposition, by E. Harris, Manager," was the proper way to make it to cover the interests of both plaintiffs; that the application, so signed, was in correct form; and that the defendant would issue a policy which would insure both plaintiffs to the extent of their respective interests in the property. Under these conditions was the policy avoided, as matter of law, because of the existence of the mortgage and the diversity of ownership? Both of these questions are determined, adversely to the contention of the defendant, in *Pacific Mutual Life Ins. Co. v. Van Fleet, supra.* In the opinion, by Chief Justice Campbell, where a multitude of authorities are collected and commented upon, many from our own state, the conclusion is reached that where incorrect answers are made as to title, with the knowledge of the soliciting agent, and also where questions in the application are not answered, or answered imperfectly, and the company without making further inquiry issues the policy, such conditions are waived. In that opinion it was said:

"In *Continental Insurance Company v. Chamberlain,* 132 U. S. 304—which, if consistent with the doctrine announced in the Fletcher case in 117 U. S., *supra,* would, as the later pronouncement, be controlling—the court, by Mr. Justice Harlan, said that the soliciting agent was the agent of the company, and if he filled out an application, which he was not bound to do, or made representations or gave advice as to the character of the answers to be given by the applicant, his acts were the acts of the insurer, and the latter could not void the policy for a breach of the

.alleged warranties or representations therein contained. It is true that the court based its decision, in part at least, upon a statute of the state of Iowa in the light of which the contract of insurance was construed, ·declaring· a soliciting agent to be the agent of an insurer in making out and transmitting applications. Nevertheless, the reasoning of the court upon general principles, as we believe, would make such an agent the representative of the insurer to the extent that his acts, in filling in the blanks, would be binding on his company.—*Insurance Company v. Wilkinson,* 13 Wall. 222, 235, 236.   *   *   *

The facts of the present case being so nearly like those in the *Chamberlain* and the *Wilkinson cases, supra,* and the doctrine which we have applied here being in harmony with our own .previous decisions, we do not hesitate to say, as applicable to the facts ·of the case at bar, that, since the assured correctly answered question 18, and the soliciting agent had knowledge that the applicant had received compensa- ·tion for an injury, but did not put down the answer as given, but wrote a different one, even though the assured signed the application and is presumed to ˙have read it, the wrong, if any committed, was that of ·the authorized agent of the insurer, and so the wrong of the insurer itself, and the latter cannot be heard ·to insist upon its right to declare void the policy on ·the ground of the alleged breach of warranty.

From another point of view, also, this alleged improper answer cannot be allowed to defeat the policy. In what we have already said we have ˙assumed, with defendant, that this answer is equivalent to a statement by the assured that he had never received ·compensation from an insurançe company for an injury. The alleged false answer on its face is imperfect and incomplete. It suggests that compensation ˙might have been received. The defendant received

the application with this incomplete and imperfect answer in it, took the applicant's premium money and issued the policy. Had it been dissatisfied with this answer, it should have withheld the policy until a more perfect and complete one had been given. Such being the case, it seems to be the general rule that the insurer cannot avoid the policy on the ground of any inaccuracy or incompleteness of such an answer.— 2 Bacon Benefit Societies and Life Insurance, 427; 1 *Bacon* § 204, *et seq.; Manhattan Ins. Co. v. Willis & Bro. et al.,* 60 Fed. Rep. 236; *Phenix Life Ins. Co. v. Raddin,* 120 U. S. 183, where Mr. Justice Gray, in an elaborate opinion collects the authorities and comments upon them, and sums up by saying '* * * where upon the face of the application a question appears to be not answered at all, or to be imperfectly answered, and the insurers issue a policy without further inquiry, they waive the want or imperfection in the answer, and render the omission to answer more fully immaterial.'—*Triple Link Association v. Froebe,* 90 Ill. App. 299."

In *State Insurance Co. v. DuBois, et al., supra,* opinion by Judge Reed, one of the paragraphs of the syllabus is as follows:

"A statement in an application for insurance * * * that the title was in the applicant and by warranty deed, when in truth it was in him and another by will, is not available as a defense to an action on the policy where it appears that the applicant disclosed all the facts to the soliciting agent of the company, by whom the misstatement was written."

In *National M. F. Ins. Co. v. Duncan,* 44 Colo. 472, at page 486, the court, in speaking of a false statement in an application for insurance concerning title, said that, since it appeared that the agent of the company had full knowledge thereof, and the company having issued the contract with such knowledge,

a condition therein avoiding the policy, if the title to the property insured was not as represented, was waived. These additional authorities support this view: *German Ins. Co. v. Hayden*, 21 Colo. 127; *Furniture Mfg. Co. v. American Credit Indemnity Co.*, 124 Fed. 25; and *McElroy v. British America Assurance Co.*, 94 Fed. 990.

There was no answer to the question in the application, "Is the personal property to be insured encumbered?" What was said in *Pacific Mutual Life Ins. Co. v. Van Fleet, supra,* to the effect that where a question is not answered, or answered imperfectly, in the application, it becomes the duty of the company, if it desires more specific information, to ask for it before issuing the policy, else the condition is waived, is applicable to the objection now urged to this point under the facts as they are shown to be. It seems to be settled, upon principle and authority, that where upon the face of the application a question appears to be not answered at all, or to be imperfectly answered, and the insurer issues a policy without further inquiry, it waives the want of, or imperfection in, the answer and makes such omission or imperfection immaterial.—*Conn. Mutual Life Ins. Co. v. Luchs*, 108 U. S. 498; *Hall v. Insurance Co.*, 6 Gray 185; *Life Insurance Co. v. Mahone*, 56 Miss. 180; *Carson v. Jersey City Ins. Co.*, 43 N. J. L. 300; and *Jersey City Ins. Co. v. Carson*, 44 N. J. L. 210.

Besides, only a portion of the subject of insurance was mortgaged, as found by the court specifically, and the inhibition went against the encumbrance of the property in its entirety, hence the condition was not in fact broken. *Phenix Ins. Co. v. Lorenz*, 7 Ind. App. 266.

In *North British & Mercantile Ins. Co. v. Freeman*, 33 S. W. 1091, the Texas court of civil appeals, speaking to this precise point, said:

"The subject of insurance in this case was the various articles of furniture, described collectively, the piano being one article of many covered by the policy. In order for a mortgage that existed at the time, or was afterwards given, to avoid the policy, under the clause above mentioned, it must have been upon the subject insured; that is, the entire property. The mortgages having reference to a part of the property, they did not defeat the policy."

Moreover, it is well settled, both in this and other states, that conditions in a policy are waived which make the policy void as soon as delivered, when the existence of the facts which lead to such result are known to the soliciting agent at the time the application was made, his knowledge being that of the company.—*Pomeroy v. Rocky Mountain Ins. & Sav. Inst.,* 9 Colo. 295; *Strauss v. Phenix Ins. Co., supra; American Ins. Co. v. Donlon, supra; Farmers & Merchants Ins. Co. v. Nixon,* 2 Colo. App. 265; *Home Insurance Co. v. Mendenhall,* 184 Ill. 458; *Mesterman v. Insurance Co.,* 5 Wash. 524; *Haire v. Insurance Co.,* 93 Mich. 481; *Philadelphia Tool Co. v. Assurance Co.,* 132 Pa. 236; *Menk v. Home Insurance Co.,* 76 Cal. 51; *Follette v. Accident Ass'n.,* 110 N. C. 377; and Vance on Insurance, page 362.

Was the conduct of Harris, in receiving and retaining the policy, such as to estop the plaintiffs from now claiming that the policy was in fact written to indemnify them both, rather than Harris alone? We think not. Harris had a right to believe that the policy would be issued to "The Exposition," and that when so issued would cover the insurable interests in the property of both himself and Arkush. He also had a right to rely upon the good faith of the company in issuing the policy to correspond with the application. All the more so since his attention was not called to the fact that the company had on its own

motion and voluntarily issued the policy to Harris, personally, and not in conformity with the application, a change which his testimony shows, and the court finds, he did not observe on receipt of the policy. It would be wholly inequitable in upholding the company in making such change, if by so doing it is able to avoid the policy in case of loss, although paid in full for the issuance of a valid and binding obligation. If the company can by its own act so place itself it would thus be enabled to work a fraud upon **the insured.** It would know that it could defeat the policy at any time at will, should occasion arise, and if no such occasion transpired, then it could retain to its own use the premium, for which it had in fact given no value. When the consideration was paid for the policy it became a valid and binding contract of insurance, and it would shock all moral sense to allow the company to now say that, although it took the insured's money, the contract issued in return therefor was and is void, and that it is not bound or obligated thereby in any way. Furthermore, under the facts of this case, the essential elements of estoppel are not present. It must be held, since the company made no objection to the application by "The Exposition," that it was its intention and purpose, that being the thing for which it was paid, to insure those who had an insurable interest in the property, and could have recovered on the policy, had it been issued to "The Exposition." So that it cannot be said that to reform the policy, so as to afford protection to the real owners of the property and allow recovery thereon accordingly, will place the company in a worse position than it intended to take, and which in law it did take, when it wrote the policy in its original form. In this situation the company clearly may not, upon the ground which is now urged, invoke the doctrine of estoppel against the plaintiffs.—*McElroy v. British*

*America Assurance Co., supra; McMaster v. New York Life Ins. Co., supra; Taylor et al. v. Glens Falls Ins. Co.,* 44 Fla. 273; *Fitchner et al. v. Fidelity Mut. Fire Ass'n.,* 68 N. W. 710; *Burson v. Fire Ass'n. of Philadelphia,* 136 Pa. State, 267; *Dryer v. Security Fire Ins. Co.,* 82 N. W. 494; *Kister v. Insurance Co.,* 123 Pa. State 553; and *Zimmer v. Accident Ins. Co.,* 207 Pa. State 472.

We are of opinion that the findings of the trial court are amply supported and fully warranted by the evidence; that there has been no misapplication of the law to the facts; and that the judgment and decree is in all respects correct and should be affirmed, and it is accordingly so ordered.

*Judgment affirmed.*

CHIEF JUSTICE CAMPBELL and Mr. JUSTICE WHITE concur.