LEAVENWORTH FOWLER, *Appellant*, V. THE TITLE GUARANTY AND SURETY COMPANY, *Appellee*.

No. 17,871.

SYLLABUS BY THE COURT.

1. SURETY BOND—*Not Signed by Employee—Delivered—Premium Collected—Waiver*.   A bond issued by an insurance company for the purpose of indemnifying an employer against loss by the fault of an employee will not be held invalid because not signed by the employee, although the bond expressly so provides, when the bond has been delivered by an agent of the company to the insured and the premium collected and when the company has a separate writing, signed by the employee, which imports the same undertaking by the employee as would his signature to the bond; on 'the contrary, the condition will be held to have been waived.

2. ———— *Same*.   When such a bond, containing a condition which renders it void at its inception, is delivered to the in-

sured and the premium is collected by an authorized agent, it will be presumed that the company waived the condition rather than that it intended to perpetrate a fraud.

Appeal from Johnson district court. Opinion filed January 11, 1913. Reversed.

*Henry M. Beardsley,* and *Edmond C. Fletcher,* both of Kansas City, Mo., for the appellant.

*Guthrie, Gamble & Street,* of Kansas City, Mo., for the appellee.

The opinion of the court was delivered by

SMITH, J.: The appellant was, during the times referred to in the action, a grain merchant residing at Kansas City, Mo. During the years 1904-1906 he had places of business at Pine Bluff, Ark., and other places. W. P. Cook was in his employ and had charge of his business at Pine Bluff.

In 1904 one Nesbit, of Kansas City, was a solicitor of insurance employed by Mastin, Drennon & Schafer Company, who were agents for the appellee company. On June 9, 1904, appellee, through Nesbit, delivered to appellant a bond, No. 18,876, guaranteeing the fidelity of Cook. The amount of the bond was $10,000, the premium paid $40, and the term expired May 1, 1905. This bond, among other provisions, contained the following:

"This bond . . . will be invalid and of no effect unless signed by the Employe. . . . And the said Employe does hereby for himself, his heirs, . . . . covenant and agree . . . that he will save, defend and keep harmless the said Company, from and against all loss and damage . . . for, or by reason, or in consequence of the said Company having entered into the present Bond."

The bond was signed by Cook and the appellee company. At the time of the making of the bond Cook signed an application containing interrogatories and

the answers made thereto by him, and also the following agreement:

"I hereby agree for myself, my heirs and administrators, in consideration of the Title Guaranty & Surety Company becoming surety for me and issuing Bond applied for, or any renewal thereof, or any further or other Bond hereby issued by the said Company on my behalf in my present or any other position in this service, to protect and indemnify the said Company against any loss, damage or expense that it may sustain or become liable for in consequence of such guarantee on my behalf by said company," etc. ·

Under date of April 20, 1905, appellee executed a bond, No. 25,420, like the one above described, expiring April 1, 1906, but Cook did not sign in the blank left for his name. At the same time the appellee company executed a number of other bonds, guaranteeing the fidelity of a number of other employees of the appellant, none of which was signed by such employees. Except for such signatures, all of these bonds were fully signed and on the same printed form. Under date of March 22, 1906, the appellee company executed the following continuation certificate:

"In Consideration of the sum of Forty & °%oo Dollars . . . hereby continues in force bond No. 25420 (the one issued on W. P. Cook of date April 20, 1905, as above set out) . . . for the period beginning the 1st day of April, 1906, and ending on the 1st day of April, 1907, subject to all the covenants and conditions of said original bond."

Appellee also issued like renewal policies on other employees of appellant. All of the premiums were paid by the appellant and received by appellee, and the bonds and renewal certificates delivered to appellant by Nesbit were put in his safe by appellant without being read by him. The appellee through its agents solicited appellant to secure such bonds, brought the documents to appellant, and said nothing to appellant on delivery thereof indicating that anything remained

to be done with them to perfect or complete them. Appellant received the same believing them to be completed contracts.

There is no evidence that any other application was asked from Cook except the one asked and given when the first bond was issued in 1904. It appears that appellee was notified promptly when the loss was discovered, and that appellee wrote its agent in Kansas City in November, 1906, as follows:

"I enclose you a copy of the employer's statement which was furnished us with bond No. 18,876, which was issued, our bond No. 25,420 having been executed as a renewal of the first one."

The court found as a legal conclusion that the instrument issued was not a valid, binding contract for lack of the signature of Cook, and that such signature thereto was not waived by the appellee.

The transaction in question in this case does not differ in principle from fire insurance and perhaps other kinds of insurance. The appellee, through its agents, prepared a bond, which for comparison answers the purpose of a fire insurance policy, and also prepared all other papers, and delivered them to appellant as complete to meet the purposes of the transaction. The appellant received them, paid the money demanded therefor, and put them in his safe supposing that he had an indemnity bond. Had no loss occurred, the appellee might have continued indefinitely to deliver, and the appellant to receive and pay for, indemnity contracts not signed by the employee, which, if the appellee is now correct, would have been absolutely worthless and would have imposed no obligation upon the appellee, and the appellee would probably not have offered to return the premiums as it also believed the contract valid and that it had fairly earned the premium. In short, the appellee would be selling something supposed to be of value and to impose obligations on its part when in fact there was no obliga-

tion created.  However honestly intended, this would
constitute a legal fraud.  For the appellee to deny the
validity of the contract after it has received the con-
sideration for the reason only that the employee, Cook,
did not sign the bond savors of fraud.   The only
purpose of his signing the bond was to indemnify the
appellee from any loss suffered on his account.   This
Cook had done by signing the application at the issu-
ance of the first bond as fully as if he had signèd the
second bond or the extension certificate thereto.

In a similar case, *General Ry. Signal Co. v. Title
G. & S. Co.*, 203 N. Y. 407, 96 N. E. 735, it was said:

"While it might be argued that the authority of
these agents of the defendant was sufficient to waive
the condition of the bond, in question, in delivering it
as it was and by receiving the premium, upon the same
principle that insurers have been held bound by the acts
of their agents in waiving conditions of a policy (*Mc-
Nally v. Phœnix Ins. Co.*, 137 N. Y. 389, 396), we have
a broader basis of facts and circumstances in this case,
upon which a waiver may securely rest.   It might be
said that the objection to the enforcement of this bond
went a little further, in principle; in that it went to
its completion as an instrument and waiver, therefore,
needed fuller proof in the facts.   However it may be,
it is not necessary to decide the point; for a waiver
by the defendant need not rest upon the fact alone of
the delivery of the bond.   The legal presumption of a
waiver may rest upon the further fact that the de-
fendant had in its possession, at the time of delivery,
the agreement signed by Ellis, which was to the same
effect as in the bond and quite as comprehensive, as
an indemnification of the defendant against any loss
by reason of going upon the bond.   The application
on behalf of the plaintiff was made a part of the bond;
but that of Ellis was not.   He was brought into it by
supplementing the usual provisions of the bond by
an agreement on his part.   Acting for their principal,
we must assume that the defendant's agents had its
interests in view and that they considered them as
well protected by the separate covenant of Ellis, as if
he had subscribed to it upon the bond.   To have in-
sisted upon such subscription by him had become un-

necessary; for the covenant in the bond had ceased to be of importance. All of the facts and circumstances, therefore, conclusively support the finding of a waiver. . . . While the defendant required the employe's signature to the bond as a condition of its validity as an obligation, as it had the right to do, in holding it estopped from now insisting upon the condition, it loses nothing but a technical defense; which, if suffered to prevail in the face of the facts and circumstances of the case, would mean the lending of the aid of the court to the perpetration of a fraud. Jealous as the law is of the rights of a surety, the limit of its protection is reached when the surety invokes its aid to defraud." (pp. 411, 413.)

The language is applicable to this case; the defense in this case is purely technical. The addition of Cook's signature would give the appellant nothing that he does not possess under his original contract. The appellant correctly contends that by delivering the bond and extension certificate and collecting the price thereof the appellee waived Cook's signature and can not now be heard to deny such waiver.

When a policy of insurance contains a condition which renders it void at its inception and this result is known to the insurer at the time of the delivery of the policy, as the appellee, through its agents, knew of the condition in this case, it will be presumed to have intended to waive the condition and to execute a binding contract rather than to have deceived the insured into thinking that he had a contract of indemnity, when in fact he had not, and to have taken his money without consideration. The knowledge of appellee's soliciting agents of the conditions at the time of the delivery of the bond was the knowledge of the appellee. (*Merchants Ins. Co. v. Harris,* 51 Colo. 95, 116 Pac. 149; *Athens Mutual Insurance Co. v. Ledford,* 134 Ga. 500, 68 S. E. 91.)

The judgment of the court is reversed and the case is remanded with instructions to vacate the judgment.

and to render judgment in accordance with the finding of fact in favor of Fowler and against the company for $3002.24, with interest and costs.