[No. 6452.   Decided April 27, 1907.]

JOHN ELLIOTT, *Respondent*, v. KNIGHTS OF THE MODERN
MACCABEES, *Appellant*.[1]

INSURANCE — APPLICATION — MISSTATEMENT OF AGE — FORFEITURE.
Where an application for fraternal insurance falsely stated that the
applicant was within the age limit, when he knew that he was in-
eligible, his certificate of membership is void and payments made
thereunder are forfeited, where the application declares the state-
ments to be true and the basis of the contract, and expressly provides
for forfeiture of payments in case of false statements or suppres-
sion of facts.

SAME—KNOWLEDGE OF MISSTATEMENTS.   A member in a mutual
benefit society cannot avoid forfeiture of his certificate for false rep-
resentations in his application that he was within the age limit,
on the theory that he did not read the application, where he in-
formed the agent that he was ineligible and consented to the agent's
"putting him through" in violation of the by-laws, repeated the false
statements in an application for reinstatement, and payed assess-
ments many years under a certificate that falsely stated his age.

SAME—NOTICE TO AGENT—FORFEITURE—ESTOPPEL.   Notice to an
agent or organizer of a mutual benefit society that an applicant was
over the age limit and ineligible, under the by-laws, is not notice to
the society which would prevent a forfeiture of the membership for
false representations as to the age, where it appears that the agent
urged the making of the false representations for the purpose of
enabling him to complete the organization of a lodge, and agreed
that the applicant should have no further trouble; since the same
amounted to a conspiracy to defraud the principal, and the applicant
had no right to assume that the notice would be communicated by
the agent to the principal.

SAME—BY-LAWS—WAIVER—OFFICERS—AUTHORITY.   By-laws of a
mutual benefit society expressly prohibiting the admission of mem-
bers over a certain age cannot be waived by the officers of the so-
ciety.

SAME—RIGHT TO RECOVER PAYMENTS—FRAUD.   Where a certificate
in a mutual benefit society is void *ab initio* for false statements that
the member was within the age limit, assessments paid to the so-
ciety cannot be recovered, where the contract expressly declares that
they shall be forfeited.

[1]Reported in 89 Pac. 929.

SAME.  Recovery cannot be had of assessments paid to a mutual benefit society under a void certificate affording no protection, where the society had done business on the current cost plan, under which the assessments had been disbursed in satisfaction of claims, and the society could not be placed in *statu quo.*

Appeal from a judgment of the superior court for Spokane county, Poindexter, J., entered June 20, 1906, upon findings in favor of the plaintiff, after a trial on the merits before the court without a jury, in an action to recover assessments paid to a fraternal benefit society.    Reversed.

*Warren W. Tolman,* for appellant.

*Wiley & Wiley* and *L. L. Westfall,* for respondent.

CROW, J.—The Knights of the Modern Maccabees, a corporation, is a fraternal society, organized on the lodge plan, for mutual protection of its members, upon whom it levies assessments to pay death losses and endowments.  Its by-laws provide that all male persons of good moral character, over eighteen and under fifty-one years of age, may be admitted as beneficial members.  On November 14, 1890, John Elliott, wishing to become a member of Tent No. 357, then being organized by one F. A. Osborne, a deputy commander at Lake City, Michigan, signed a written application, in which he stated that he was fifty years of age.  On February 2, 1891, an endowment certificate reciting his age as fifty years was issued to him for $2,000, payable at death, or in the event of his living to the age of seventy, to be then payable to him in ten equal annual installments.  The certificate provided that it was subject to the conditions, limitations, warranties, and agreements contained in his application.

On November 27, 1891, being suspended for nonpayment of assessments, Elliott made a written application for reinstatement, in which he stated that he was then fifty-one years of age.  He was afterwards re-examined and reinstated.  At the date of his original application Elliott was, in fact, over

fifty-five years of age. Knowledge of his true age did not come to the society until he was actually seventy years old, when he attempted to collect annually one-tenth of his endowment. On February 15, 1905, he wrote the Grand Commander of the order as follows:

"I was 70 years old on the 13th day of January, but, of course, my certificate shows 65 years old, but the way that comes is this: They started a Tent in Lake City, Michigan, and I went in as a charter member on these conditions that I was to have no trouble hereafter, as I told them that I was too old to join the Order. I told F. A. Osborne, Deputy Commander. He was after me for a week to join. I told him I was too old and he said he would work me in without any trouble if I should go in as they lacked one man and did not know where to get him, so that they could organize the Tent. . . ."

Some correspondence followed, and the society, learning that Elliott was over fifty-five when admitted, refused to receive further assessments from him, and forfeited his certificate, together with all assessments theretofore paid. The forfeiture was declared under the following stipulation, contained in his written application for membership and made a part of his certificate:

"I hereby declare that the above are fair and true answers to the foregoing questions, and I hereby agree that these statements, with this application and the constitution and laws now in force or that may hereafter be adopted, . . . shall form the basis of the contract for endowment; that any untrue or fraudulent answers, and suppression of any facts in regard to my health and age, . . . shall vitiate my beneficiary certificate and *forfeit all payments made thereon;* . . ."

Elliott thereupon commenced this action to recover $348 paid by him on assessments. He claims that he truthfully stated his age to Osborne, the deputy commander; that he then knew he was not eligible to beneficial membership; that Osborne agreed to work him in, and filled a blank application falsely stating his age to be fifty years; that after giving

truthful answers to Osborne he, without reading the application, in good faith, signed the same. It is not claimed by Elliott that Osborne, or any officer of the defendant, filled the blank when his application for reinstatement was made one year later, although he denies that he did so himself. The case was tried without a jury, and the trial judge, after making findings of facts and conclusions of law, entered judgment in favor of the plaintiff. The defendant has appealed.

There is not much conflict in the evidence, which shows the facts above stated. The appellant, in support of its assignments of error, contends that respondent knew he was not entitled to beneficial membership; that he not only signed the original application containing a false statement as to his age, but also signed another application for reinstatement, repeating the false statement; that during all the years he paid assessments, he held his certificate reciting that he was only fifty years of age when admitted; that he and Osborne conspired to deceive the appellant into admitting him to beneficial membership, and that his certificate was void *ab initio*, rendering his payments liable to forfeiture.

The respondent contends that, when he stated his true age to Osborne, who was appellant's agent, Osborne's knowledge became its knowledge, and that the appellant, having received the assessments after acquiring such knowledge, is estopped from declaring any forfeiture. Accepting as truthful the respondent's statement that he told his correct age to Osborne, we nevertheless conclude from the evidence that he and Osborne did in fact conspire to defraud the appellant into accepting him as a beneficial member. The general rule in the law of agency is, that notice to an agent is notice to his principal. But an exception to the application of this general rule arises when the agent's conduct is such as to raise a clear presumption that he will not communicate to his principal his knowledge of the fact in controversy, as where he acts in his own interest and adversely to the interest of his principal. 1 Am. & Eng. Ency. Law (2d ed.), 1144, 1145. *Hanf v.*

*Northwestern Masonic Aid Ass'n.*, 76 Wis. 450, 45 N. W. 315. From respondent's statements we must infer that Osborne was acting in his own interest, desiring to secure a sufficient charter membership for organization. Respondent knew this, and had no right to assume that Osborne would communicate his true age to the appellant.

In *National Life Ins. Co. v. Minch*, 53 N. Y. 144, 150, the court said:

"If a person colludes with an agent to cheat the principal, the latter is not responsible for the acts or knowledge of the agent. The rule which charges the principal with what the agent knows is for the protection of innocent third persons, and not those who use the agent to further their own frauds upon the principal."

We are convinced that respondent participated in defrauding the appellant, for the reasons that the false statement as to his age was repeated in his application for reinstatement; that he knew his age was incorrectly stated in his endowment certificate; and that, when he actually arrived at the age of seventy, he endeavored to secure the annual payments on his endowment, although he had then paid assessments for a period of five years less than his contract contemplated. In both of his applications he declared that all his answers were fair and true, and agreed that his statements therein contained, together with the constitution and by-laws, should form the basis of his contract of endowment. He knew he was fifty-five years of age, and that he could only be admitted to membership by some fraudulent method in violation of the constitution and by-laws. Accepting as true his statement that he did not know Osborne falsely stated his age in the application, he did know that Osborne could only work him in as a member by perpetrating some fraud upon the appellant. The statements as to his age, whether they be regarded as warranties or representations, were material and were conclusively made so by express agreement making the certificate void and forfeiting all payments made thereon

if they were untrue.   Under these circumstances the forfeiture contemplated by the agreement necessarily follows.   *Jeffries v. Life Ins. Co.*, 22 Wall. 47, 22 L. Ed. 833; *Aetna Life Ins. Co. v. France*, 91 U. S. 510, 23 L. Ed. 401; *Georgia Home Ins. Co. v. Warten*, 113 Ala. 479, 22 South. 288, 59 Am. St. 129; *Ball v. Granite State Mut. Aid Ass'n.*, 64 N. H. 291, 9 Atl. 103; *Co-Operative Life Ass'n. v. Leflore*, 53 Miss. 1; *Foot v. Aetna Life Ins. Co.*, 61 N. Y. 571; *Barteau v. Phoenix Mut. Life Ins. Co.*, 67 N. Y. 595; *Dwight v. Germania Life Ins. Co.*, 103 N. Y. 341, 8 N. E. 654, 57 Am. St. 729; *Continental Ins. Co. v. Rogers*, 119 Ill. 474, 10 N. E. 242, 59 Am. Rep. 810.

The by-laws of the appellant society expressly prohibited the admission of beneficial members over fifty years of age. This provision being intended for the protection of its members was one that could not be waived by its officers.   While the authorities hold that certain omissions affecting procedure, such as time of payment of assessments, proof of loss, etc., may sometimes be waived, it certainly is not the rule that officers of a fraternal society organized for the mutual protection of its members can waive a by-law so as to admit persons of a prohibited age and thereby bind the society.   3 Am. & Eng. Ency. Law (2d ed.), 1069.   In *McCoy v. Rowan Catholic Mut. Ins. Co.*, 152 Mass. 272, 25 N. E. 289, an applicant made a misrepresentation as to his age, and the question arose as to whether the officers of the society had waived such misrepresentation.   The court said:

"But even if the officers of the corporation had attempted to waive the by-laws in this particular, which was of the substance of the contract, we are of opinion that they had no authority so to do.   This is a corporation which does not make contracts of life insurance with strangers, but arranges a system of payments for the benefit of the relatives of its deceased members.   It adopts by-laws to determine the relations of the members to one another, and also their rights against the corporation.   The principles which apply to ordinary mutual insurance companies in regard to the waiver of by-

laws by officers are equally applicable to this corporation. *Bolton v. Bolton*, 73 Maine 299; *Swett v. Citizens' Relief Society*, 78 Maine 541. It is well settled that the officers of a mutual insurance company have no authority to waive its by-laws which relate to the substance of the contract between an individual member and his associates in their corporate capacity. *Hale v. Mechanics' Ins. Co.*, 6 Gray 169; *Baxter v. Chelsea Ins. Co.*, 1 Allen 294; *Mulrey v. Shawmut Ins. Co.*, 4 Allen 116; *Evans v. Trimountain Ins. Co.*, 9 Allen 329; *Swett v. Citizens' Relief Society*, 78 Maine 541. See also *Burbank v. Boston Police Relief Association*, 144 Mass. 434."

Respondent insists that, if his certificate was void *ab initio*, as contended by the appellant, he never had any protection; that his payments were therefore made without consideration, and that he should now be entitled to recover the same. In view of his fraudulent conduct and the express stipulations of his contract, which declared a forfeiture of his assessments for false statement as to his age, this contention cannot be sustained. 16 Am. & Eng. Ency. Law (2d ed.), 954; *Aetna Life Ins. Co. v. Paul*, 10 Ill. App. 431; *Taylor v. Grand Lodge, A. O. U. W.* (Minn.), 105 N. W. 408.

As an additional reason why the respondent should not be permitted to recover, the appellant correctly contends that the parties cannot now be placed in *statu quo*. The appellant is a corporation doing business for the mutual benefit of its members and not for pecuniary profit. While it was receiving the assessments from the respondent, the amounts so collected were all used to pay death and disability claims. Its business was conducted on what is known as the current cost plan. Assessments were only levied upon the membership as needed to pay current death and endowment claims. All the assessments paid by the respondent went into the life benefit fund and were immediately disbursed in satisfaction of the claims mentioned. None of the money paid by him is now in appellant's possession. If it should now refund to him, it would have to do so from assessments collected from many who have become members since the payments were made by him.

This would be inequitable, unjust, and a misappropriation of funds. The fact that the parties cannot be placed in *statu quo* does not result from any wrongful act of the appellant, but from the wrongful acts of the respondent. Considering the manner in which the business of the appellant has been conducted, and properly construing the contract entered into by the respondent, we conclude that the appellant had a clear right to forfeit the assessments, and that it could not do otherwise under its by-laws, or in justice to its membership.

The honorable trial court erred in entering judgment in favor of the respondent. The judgment is reversed, and the cause remanded with instructions to dismiss the action.

HADLEY, C. J., FULLERTON, ROOT, MOUNT, DUNBAR, and RUDKIN, JJ., concur.