## No. 13,395.

KOIN *v*. MUTUAL BENEFIT HEALTH AND ACCIDENT ASSOCIATION.
(41 P. [2d] 306)

Decided January 7, 1935.   Rehearing denied February 25, 1935.

164

Mr. BENTLEY M. McMULLIN, for plaintiff in error.

Mr. JAMES J. SULLIVAN, for defendant in error.

*In Department.*

MR. JUSTICE HILLIARD delivered the opinion of the court.

THIS is an action on a health and accident policy. A jury returned a verdict in favor of the insuring company, and to judgment entered thereon plaintiff assigns error.

The policy, issued November 1, 1929, insured against loss of time—fixing the rate and duration of payment—"resulting from disease, the cause of which originates thirty days after the date of this policy." The application, a copy of which was attached to and made part of the policy, contained the following questions and answers: "Are you sound physically and mentally?" "Yes." "Have you received medical or surgical advice or treatment or had any local or constitutional disease within the past five years?" "No." "Do you hereby apply to the Mutual Benefit Health & Accident Association for a policy to be based upon the foregoing statements of facts, and do you understand and agree that the falsity of any statement in this application shall bar the right to recover if such false statement is made with intent to deceive or materially affects either the acceptance of the risk or the hazard assumed by the Association, and do you agree to notify the Association promptly of any change in your occupation, or if you take additional insurance, and do you hereby authorize any physician or other person who has attended or may attend you to disclose any information thus acquired?" "Yes."

Plaintiff claimed total disability, due "solely as a result of disease, to-wit, multiple sclerosis," which he sets forth in three counts, alleging in the first, disability from June 4, 1931; in the second, from February 1, 1932; and in the third, from July 14, 1932. In separate defenses, the company alleged that the contract was obtained through plaintiff's active fraud and wilful deceit, and that if plaintiff suffered from sclerosis, as he alleged, it was the result of an accident suffered by him before applying for the policy, a fact he fraudulently and falsely concealed, which concealment was material to the risk; that the policy was issued pursuant to plaintiff's written application, in which appeared the questions and answers already quoted. The company alleged the fact and plaintiff's knowledge of the falsity of the statement, and his expectation that it would be believed to be true, and which the company did believe, and on which it acted. Further answering it said that had plaintiff answered truthfully, the defendant would not have issued said policy; that in fact at the time plaintiff made such answers he had previously sustained an accident from which he was then suffering, a fractured cervical vertebra, which it is alleged is the true and proximate cause of the disorder from which he is now suffering, to wit, transverse myelitis; that said condition was concealed; that a pressure was exerted upon the spinal cord of plaintiff, which fact was also concealed by him from the defendant by said application. Plaintiff replied in general denial.

It appears that June 7, 1925, plaintiff, diving in a lake, struck the bottom so violently that he suffered a fracture of the fifth cervical vertebra, partial paralysis resulting; that for a time he was confined in a hospital and longer still at his home, being attended by physicians and receiving medical attention and treatment; that although at the end of a year plaintiff was so far recovered as to be able to work in his father's store and later still in a store of his own, it is undisputed that in 1927 he was examined relative to the injury by three Denver physicians; that an-

other·Denver physician and two of those who examined plaintiff in 1927, examined him in 1933, and testified to the effect that the illness for which he claimed compensation was attributable to the injury of 1925. In an application for disability benefits made November 16, 1932, to another insurance company, plaintiff stated that his health was first affected June 7, 1925. In February, 1932, plaintiff was examined in the Methodist Hospital, Indianapolis, and final diagnosis there showed "transverse myelitis," the probable cause being, "Old fracture, cervical vertebra. Last few weeks has acute cord condition involving right side especially right arm."

On the other hand, physicians testified that prior to his application for the policy on which recovery is sought, plaintiff had fully recovered from the injury of 1925, and that the illness on which he based his claim originated more than thirty days after the date of the policy. Not only so, but laymen testified to the work plaintiff had done, his mountain climbing and other physical accomplishments, occurring after the injury of 1925, both before and subsequent to the date of the policy, all tending to indicate his recovery from that injury. Pictures of plaintiff taken at various times and places, in many poses, all indicating strength and vigor, were introduced. In addition to what plaintiff's witnesses deposed, he himself testified at length as to his condition, relating many physical activities in which he had engaged, and attested his belief that before he took out the policy sued on, he had fully recovered from the injury of 1925.

In illuminating instructions, none objected to by plaintiff, and in addition to which neither party made request, the court submitted for jury determination the question of whether the illness from which plaintiff was suffering originated thirty days after November 1, 1929, the date of the policy, or prior to the date thereof. In a formal verdict the jury made return to the effect that plaintiff's illness antedated the policy. Preceding the

judgment, plaintiff's motions for judgment notwithstanding the verdict and for new trial were denied.

We discuss the two principal propositions presented by plaintiff. The first is based on the contention that the company's agent taking the application had knowledge of the injury which plaintiff had suffered in 1925, and although such fact was not disclosed in the written answer to a question fairly calling for disclosure, the agent's knowledge operated to estop the company from claiming it was deceived to its undoing. Both plaintiff and the agent testified to the agent's knowledge of the injury. It appears that when the agent was making out the application, plaintiff was so busy in the store which he was operating, that he gave only slight attention to the questions and answers, all answers being written by the agent; that the agent of his own motion, without asking the questions material to this inquiry, wrote answers that were untrue, based, as he testified, on his belief that plaintiff had fully recovered from the injury. If this were the entire story the case might be said to come within the doctrine announced by Colorado decisions, the cases resting on varying facts, to the general effect that an insurance company may not be heard to say it was not apprised of what its agent knew. See *New York Life Ins. Co. v. Fukushima,* 74 Colo. 236, 220 Pac. 994; *Northwestern M. L. I. Co. v. Farnsworth,* 60 Colo. 324, 153 Pac. 699; *Pacific Life Co. v. Van Fleet,* 47 Colo. 401, 107 Pac. 1087. But there is more to the record. After the soliciting agent had made his own answers to the controlling questions, clearly false, plaintiff was still so occupied with his merchandising duties that he could neither look at the prepared application nor pause to sign it. Instead, he asked the agent to sign for him, which the agent did, in no way indicating, however, that the signature was not that of plaintiff. Testifying to the point, the agent, after stating that he had written the entire application, supplying the answers himself, as we have seen, said: "I says, Harry, if you would come and

sign it''; and ''he says, you just sign it and go to the office and get your check; and that is what I did, and I was not very long getting to the bank, I needed the money and it was there.'' Further, when asked whether he had ''any other motive in taking this application than give the company truthful answers,'' the agent answered ''None whatever, only that I wanted the business.''

Coupling plaintiff's indifference about what answers were to go forward to the company and his evident caution about signing the application containing the false answers, with the agent's disregard of the company's interest and willingness to deceive his principal to his own immediate profit, we are constrained to the view that in this transaction the insurance company was without representation; that of this, plaintiff is not so innocent that he may claim the company is estopped to avail itself of the trial's disclosure in that regard. ''In this case,'' as said by the Michigan court in a matter not essentially different, ''the most that plaintiff's counsel could possibly contend is that by collusion between the applicant and defendant's agent, they made a false answer, and now seek to hold the company by making a 'sword instead of a shield' out of the salutary rule that the knowledge of the agent is notice to the principal.'' *Mudge v. Supreme Court, Independent Order Foresters,* 149 Mich. 467, 112 N. W. 1130, 119 A. S. R. 686. ''It is ordinarily true that a principal is affected with notice of such facts as come to the knowledge of his agent in the course of his business. When an agent, however, ceases to act for his principal in good faith, and through collusion with another, desiring through him to cheat and defraud the principal, practically enters into the service of that other for the purpose of promoting the interest of that person, or the common interest of himself and that other in fraud of his principal, then the person who so avails himself of the services of such an agent cannot claim that his act or his knowledge in reference to matters to which the fraudulent collusion relates are binding

on the person intended to be defrauded. In such a case the agent pro hac vice becomes the agent of the person he collusively serves.'' *Centennial Mut. Life Ass'n v. Parham,* 80 Tex. 518, 16 S. W. 316. ''The general rule in the law of agency is, that notice to an agent is notice to his principal. But an exception to the application of this general rule arises where the agent's conduct is such as to raise a clear presumption that he will not communicate to his principal his knowledge of the fact in controversy, as where he acts in his own interest and adversely to the interest of his principal.'' *Elliott v. Knights of Modern Maccabees,* 46 Wash. 320, 89 Pac. 929.

On the merits of the record, as we are persuaded, our disposition of the point is justified, but we think it well to note further that the insured did not plead estoppel, nor was the doctrine advanced by an instruction requested or given. In *Northwestern Mut. Life Ins. Co. v. Farnsworth, supra,* cited by plaintiff in this case, the insured pleaded estoppel in his replication. As to the general rule, see 10 R. C. L. 842, §148.

It is contended that the court erred in setting aside a judgment entered by default, because, first, the showing was not sufficient, and, second, the mode employed to that end was not authorized. The record justified the default; the showing made for vacation is not highly convincing, and were the question of primary determination we should be perplexed as to our course. Application to set aside the default was made almost immediately after entry, which had been taken at earliest opportunity. The trial court, in which wide discretion is lodged, considered that the ends of justice warranted it in setting aside the default and ordered accordingly. We cannot think there was abuse of discretion. As to the procedure employed, it is to be noted that default was entered while a certain judge was presiding, and that when the application to vacate was to be heard another judge was presiding in the division of the court where the proceeding was pending. That judge ordered the hearing to

be before the judge, then presiding in another division, who had made the default order, and the other judge consenting to hear the application it was heard and determined by him. It is said that the procedure violated certain rules of the Denver district court having to do with the jurisdiction of the several judges. The rules, as we construe them, do not specifically provide against the course followed, and in the absence of such or other inhibition, and we find none, the procedure adopted has much to commend it.

Other points, while not discussed, have had our attention. We believe them to be without merit.

Considering the record generally, the pleaded issues, the unchallenged charge to the jury, the sharply conflicting evidence, and the jury's solution, we are constrained to the view that the trial court adjudged within the law.

Let the judgment be affirmed.

MR. CHIEF JUSTICE ADAMS and MR. JUSTICE CAMPBELL concur.