Joe SILVER, Plaintiff–Appellant,

v.

COLORADO CASUALTY INSURANCE COMPANY, Defendant–Appellee.

No. 07CA2216.

Colorado Court of Appeals, Div. VII.

March 5, 2009.

Brian A. Murphy & Associates, LLC, Brian A. Murphy, Lee A. Berrish, Arvada, Colorado for Plaintiff–Appellant.

Rothgerber Johnson & Lyons, LLP, Brian J. Spano, Hillary D. Wells, Denver, Colorado, for Defendant–Appellee.

Opinion by Judge J. JONES.

On July 19, 2005, a house in Denver owned by plaintiff, Joe Silver, suffered extensive fire damage. He sued the company that insured the property, defendant, Colorado Casualty Insurance Company, after it denied coverage. The district court granted summary judgment in Colorado Casualty's favor on the basis that Colorado Casualty had lawfully rescinded the insurance policy. Silver appeals, and we reverse and remand.

## I. Background

Silver bought the property in July 2003. Shortly thereafter, he contacted Deanna Smith, an employee of the insurance brokerage firm of Brown & Brown, Inc., an authorized agent of Colorado Casualty, for the purpose of obtaining insurance coverage on the property. Silver and Smith spoke on the telephone on a few occasions, following which Smith sent Silver an application for insurance that she had completed.

The application represented that the house was in good housekeeping condition and occupied by a single-family tenant. The application contained an affirmation stating: "I have read the above application and I declare that, to the best of my knowledge and belief, all of the foregoing statements are true, and that these statements are offered as an inducement to the company to issue the policy for which I am applying." Silver signed the application and returned it to Smith, who forwarded it to Colorado Casualty. There, an underwriter, Christy Williams, examined the application and determined that it met Colorado Casualty's underwriting guidelines. Williams, on behalf of Colorado Casualty, issued Silver a policy covering the property.

It appears to be undisputed that the house was vacant and uninhabitable at the time Silver submitted the application for insurance coverage (though two individuals may have occupied the back porch for a time). In fact, two months after Silver submitted his application, the City and County of Denver cited him for maintaining property that was a neighborhood nuisance. The City's reasons included that the property was unsafe, was boarded up, and had not been occupied for at least three consecutive months.

Following the fire, Colorado Casualty learned that the property was not as represented in the application at the time Silver submitted it—for example, it was not in good condition and was uninhabited. Colorado Casualty notified Silver that based on the alleged misrepresentations in the application it was rescinding the policy and would not pay any insurance benefits.

Silver filed suit against Colorado Casualty alleging breach of contract and bad faith breach of insurance contract. Following discovery, Colorado Casualty filed a motion for summary judgment asserting that it had lawfully rescinded the policy, and, therefore, there was no policy on which Silver could base his claims.

The district court granted Colorado Casualty's motion for summary judgment. The court concluded that the undisputed evidence established that Silver had made material misrepresentations in the application, rejecting as unsupported by evidence or contrary to law Silver's arguments in opposition.

## II. Discussion

Silver contends that: (1) Colorado Casualty waived its defense of rescission by failing to plead the basis for the defense—fraud—with specificity; (2) the district court erred in granting summary judgment because there are genuine issues of material fact as to Colorado Casualty's entitlement to rescind the policy; and (3) in granting summary judgment, the district court improperly relied on inadmissible evidence. Although we are not persuaded that Colorado Casualty waived its rescission defense, we agree with Silver that there is a genuine issue of material fact as to whether Colorado Casualty is estopped to rescind the policy.

### A. Standard of Review

Summary judgment is appropriate if the pleadings and supporting documents show that there is no genuine issue as to any material fact and that the moving party is

entitled to judgment as a matter of law. C.R.C.P. 56(c); *West Elk Ranch, L.L.C. v. United States*, 65 P.3d 479, 481 (Colo.2002); *Western Innovations, Inc. v. Sonitrol Corp.*, 187 P.3d 1155, 1158 (Colo.App.2008). The moving party carries the initial burden to show that there is no genuine issue of material fact. *AviComm, Inc. v. Colo. Pub. Utils. Comm'n*, 955 P.2d 1023, 1029 (Colo.1998). "Once the moving party has met its initial burden, the burden shifts to the nonmoving party to establish that there is a triable issue of fact." *Id.; accord Western Innovations*, 187 P.3d at 1158. The nonmoving party is entitled to all favorable inferences that reasonably may be drawn from the undisputed facts, *West Elk Ranch*, 65 P.3d at 481, and similarly the court must resolve all doubts as to the existence of a genuine factual issue in favor of the nonmoving party, *id.; AviComm*, 955 P.2d at 1029.

We review an order granting a motion for summary judgment de novo. *West Elk Ranch*, 65 P.3d at 481; *Western Innovations*, 187 P.3d at 1158. In conducting that review, we apply the same standards as those governing the district court's consideration of the motion. *Smith v. Boyett*, 908 P.2d 508, 514 (Colo.1995); *Williams v. State Farm Mut. Auto. Ins. Co.*, 195 P.3d 1158, 1160 (Colo.App.2008).

### B. Waiver of Defense

As a threshold matter, we address and reject Silver's contention that Colorado Casualty waived the defense of rescission by failing to plead fraud specifically in its answer to the complaint.

In its answer, Colorado Casualty asserted, as affirmative defenses, that it had properly rescinded the policy and that Silver could not recover on the policy because he had made "material misrepresentations" in the application. Almost eleven months later, after Colorado Casualty's motion for summary judgment was at issue, Silver filed an objection to the motion and moved to strike it, claiming, for the first time, that because Colorado Casualty's rescission defense was based on an allegation of fraud, and Colorado Casualty had failed to plead fraud with particularity in its answer as required by C.R.C.P. 9(b), Col-

orado Casualty had waived the defense. The court did not address Silver's waiver argument in its order granting Colorado Casualty's motion for summary judgment.

■ On appeal, Silver again argues that Colorado Casualty waived its rescission defense by failing to plead it with particularity as required by Rule 9(b). Colorado Casualty responds that Silver waived his right to assert its noncompliance with the rule. We agree with Colorado Casualty.

■ Rule 9(b) provides that "[i]n all averments of fraud ..., the circumstances constituting fraud ... shall be stated with particularity." Although the rule does not require that the party claiming fraud provide detailed allegations of evidentiary fact, *Northwest Dev., Inc. v. Dunn*, 29 Colo.App. 364, 368, 483 P.2d 1361, 1363 (1971), the claimant "must at least state the main facts or incidents which constitute the fraud...." *State Farm Mut. Auto. Ins. Co. v. Parrish*, 899 P.2d 285, 289 (Colo.App.1994); *see Coon v. Dist. Court*, 161 Colo. 211, 215, 420 P.2d 827, 829 (1966) (party must plead facts establishing the elements of fraud).

For the purpose of addressing Silver's argument, we assume, without deciding, that a defense of rescission based on an allegation of fraud is subject to the pleading requirements of Rule 9(b). *See generally* 5A Charles Alan Wright & Arthur R. Miller, *Federal Practice and Procedure* § 1297, at 182–83 & n. 28 (3d ed.2004) (all defenses based on fraud are subject to Fed.R.Civ.P. 9(b)); 2 James Wm. Moore et al., *Moore's Federal Practice* § 9.03[1][d], at 9–21 (3d ed.2008) (same).

In *O.K. Uranium Dev. Co. v. Miller*, 140 Colo. 490, 345 P.2d 382 (1959), the defendants argued on appeal that the plaintiff had failed to plead his fraud claim with particularity as required by Rule 9(b), and therefore they were entitled to judgment as a matter of law. In rejecting that argument, the court observed:

> While a motion to dismiss was filed in the trial court, it was not argued or ruled upon and the defendants thereafter filed an answer in which the motion to dismiss was not repeated. Trial proceeded on the is-

sues made by the complaint and answer without objection, and without the sufficiency of the complaint being again challenged.

*Id.* at 492–93, 345 P.2d at 383. In effect, the court concluded that the defendants had waived their Rule 9(b) objection by failing to raise it timely. *See also Alien, Inc. v. Futterman,* 924 P.2d 1063, 1068 (Colo.App.1995) ("an improper assertion of an affirmative defense must be objected to or such defect is waived"); *cf. Cox v. Pearl Investment Co.,* 168 Colo. 67, 70–71, 450 P.2d 60, 61–62 (1969) (parties waived right to object to the defendant's failure to assert the affirmative defense of release in its answer, as required by C.R.C.P. 8(c), by failing to object when the defendant raised it in a motion for summary judgment).

The federal courts, in applying Fed. R.Civ.P. 9(b), have consistently held that a party waives its right to object to another party's failure to comply with the rule by neglecting to raise the objection in a responsive pleading or a timely motion. *See, e.g., Prakash v. Pulsent Corp. Employee Long Term Disability Plan,* 2008 WL 3905445, at *2 (N.D. Cal. No. C–06–7592 SC, Aug. 20, 2008) (unpublished order); *Davsko v. Golden Harvest Products, Inc.,* 965 F.Supp. 1467, 1473–74 (D.Kan.1997); *Todaro v. Orbit Int'l Travel, Ltd.,* 755 F.Supp. 1229, 1234 (S.D.N.Y.1991); *United Nat'l Records, Inc. v. MCA, Inc.,* 609 F.Supp. 33, 38–39 (N.D.Ill. 1984); *see generally Moore's Federal Practice* § 9.03[5]. Because Rule 9(b) and Fed. R.Civ.P. 9(b) are essentially identical, we consider case law interpreting the federal rule as persuasive in interpreting our own. *State Farm Mut. Auto. Ins. Co.,* 899 P.2d at 288.

In this case, as noted, Silver did not object to Colorado Casualty's alleged failure to comply with Rule 9(b) in pleading rescission until after Colorado Casualty's motion for summary judgment—which was based on the rescission defense—was at issue. In the intervening eleven months between Colorado Casualty's filing of its answer and Silver's objection to the rescission defense, the parties conducted substantial discovery, filed several motions, and prepared and signed a

trial management order, which specifically noted that the rescission defense was to be tried. Silver's response to Colorado Casualty's motion for summary judgment did not raise the Rule 9(b) issue, nor did he object to the rescission defense in the trial management order.

Under these circumstances, we conclude that Silver waived any right to claim that Colorado Casualty failed to comply with Rule 9(b) in asserting its affirmative defense of rescission. Accordingly, we do not reach the merits of his Rule 9(b) argument.

## C. Genuine Issue of Material Fact

■ To rescind an insurance policy on the basis of an alleged misrepresentation by the applicant, the insurer must prove that:

(1) the applicant made a false statement of fact or concealed a fact in his application for insurance; (2) the applicant knowingly made the false statement or knowingly concealed the fact; (3) the false statement of fact or the concealed fact materially affected either the acceptance of the risk or the hazard assumed by the insurer; (4) the insurer was ignorant of the false statement of fact or concealment of fact and is not chargeable with knowledge of the fact; [and] (5) the insurer relied, to its detriment, on the false statement of fact or concealment of fact in issuing the policy.

*Hollinger v. Mut. Benefit Life Ins. Co.,* 192 Colo. 377, 381, 560 P.2d 824, 827 (1977) (footnote omitted); *accord Murray v. Montgomery Ward Life Ins. Co.,* 196 Colo. 225, 227–28, 584 P.2d 78, 80 (1978).

Silver contends that genuine issues of material fact exist as to: (1) whether he made false statements in the application; (2) whether he knew the statements were false; (3) whether Colorado Casualty was ignorant of the falsity of the statements; and (4) whether Colorado Casualty detrimentally relied on the false statements. (He does not argue on appeal that there is a genuine issue of material fact as to whether the false statements were material.)

His challenges to four of the five elements of the *Hollinger* test are based essentially on two arguments: (a) Colorado Casualty could

not rescind the policy because he gave correct information to Colorado Casualty's agent, Smith, but Smith put the false information in the application (as discussed below, an estoppel defense); and (b) Colorado Casualty could not reasonably rely on false information in the application because it had a duty to investigate the truthfulness of that information, but did not do so. We agree with Silver's first argument, but reject the second.

### 1. Estoppel

#### a. Preservation of the Issue

■ Colorado Casualty contends that Silver failed to preserve his estoppel defense because he did not raise it in the district court. *See Estate of Stevenson v. Hollywood Bar & Cafe, Inc.*, 832 P.2d 718, 721 n. 5 (Colo.1992) (arguments never presented to the district court may not be raised on appeal); *Yeiser v. Ferrellgas, Inc.*, 214 P.3d 458, 461 (Colo.App. 2008) ("In civil cases, we generally decline to address issues that were not raised in the trial court."). Though the question is a close one, we conclude that Silver adequately preserved the issue.

In his response to Colorado Casualty's motion for summary judgment, Silver asserted that he gave Smith correct information, and therefore Colorado Casualty must have known of the discrepancies between the information he conveyed to Smith and the information she put down in the application. Colorado Casualty understood Silver's argument well enough to reply that Silver was bound by the representations in the application because he signed it, notwithstanding that he claimed to have given correct information to Smith. As discussed more fully below, Silver's ability to successfully invoke the estoppel defense turns on whether he or Colorado Casualty is correct as a matter of Colorado law as to which party is deemed more at fault in these circumstances. Therefore, the issue was presented to the district court. *See Paratransit Risk Retention Group Ins. Co. v. Kamins*, 160 P.3d 307, 319 (Colo.App.2007).

#### b. Merits

■ Under long-standing Colorado law, an insurer is estopped from rescinding an insurance contract and denying coverage on the basis of a misrepresentation in the application when the applicant acted in good faith and gave truthful information to the insurer's agent, but the agent inserted false information into the application. *New York Life Ins. Co. v. Fukushima*, 74 Colo. 236, 239–40, 220 P. 994, 995–96 (1923), *disapproved of on other grounds by Hollinger*, 192 Colo. 377, 560 P.2d 824; *Northwestern Mut. Life Ins. Co. v. Farnsworth*, 60 Colo. 324, 337–38, 153 P. 699, 703–04 (1915), *disapproved of on other grounds by Hollinger*, 192 Colo. 377, 560 P.2d 824; *Pacific Mut. Life Ins. Co. v. Van Fleet*, 47 Colo. 401, 412, 107 P. 1087, 1091 (1910); *Nat'l Mut. Fire Ins. Co. v. Duncan*, 44 Colo. 472, 486–87, 98 P. 634, 639–40 (1908); *German Ins. Co. v. Hayden*, 21 Colo. 127, 139–40, 40 P. 453, 457 (1895); *State Ins. Co. v. Taylor*, 14 Colo. 499, 504–05, 507–09, 24 P. 333, 335–36 (1890); *American Central Ins. Co. v. Donlon*, 16 Colo.App. 416, 421–22, 66 P. 249, 250–51 (1901); *State Ins. Co. v. Du Bois*, 7 Colo.App. 214, 220–23, 44 P. 756, 758–59 (1895). *But see Federal Life Ins. Co. v. Kras*, 96 Colo. 589, 593–94, 45 P.2d 636, 637–38 (1935) (observing, in dictum, that if the insured had understood the English language, and received and retained the application, he would have been presumed to have examined it and could not recover on the policy); *Foster v. Auto–Owners Ins., Co.*, 703 N.E.2d 657, 659 (Ind.1998) (an applicant's signature on the application makes him responsible for all the information in it, even if he gave correct information to the agent); *Perry v. Continental Ins. Co.*, 178 Wash. 24, 33 P.2d 661, 662 (1934) (same). The rationale for this rule (here referred to as the *Van Fleet* rule) is that because the applicant gave correct information to the insurer's agent, the insurer is deemed to know that contrary information in the application is false, and, having issued the policy despite knowing of the false information, may not later avoid liability on the policy based on the false statements. *See, e.g., Duncan*, 44 Colo. at 486–87, 98 P. at 639–40.

■ A contrary rule applies, however, if the applicant gave the insurer's agent false information, or did not give the agent any information, and the agent inserted false information into the insurance application. In such circumstances, the insurer may rescind (or otherwise avoid liability on) the insurance contract based on any material misrepresentations contained therein. *Koin v. Mut. Benefit Health & Accident Ass'n,* 96 Colo. 163, 167–69, 41 P.2d 306, 307–08 (1935); *Modern Woodmen of America v. Int'l Trust Co.,* 25 Colo.App. 26, 37–40, 136 P. 806, 810–11 (1913); *Sun Fire Office v. Wich,* 6 Colo.App. 103, 112–13, 39 P. 587, 590 (1894). This rule (here referred to as the *Wich* rule) is based on the rationale that in such circumstances the applicant is not entitled to assume that the agent included correct information in the application, and in contrast to the situation in the cases applying the *Van Fleet* rule, the applicant's culpability outweighs that of the agent. *See Modern Woodmen,* 25 Colo.App. at 37–49, 136 P. at 810–14.

We reject Colorado Casualty's contention that the *Wich* rule, rather than the *Van Fleet* rule, applies here because Silver signed the application and the application contained an affirmation attesting to the truth of the information therein. In *Van Fleet* itself, as in this case, the applicant signed the application and warranted in the application that the information therein was true. Further, the application at issue in *Van Fleet* said that the insurer would not be bound by anything said to the agent unless it was written in the application. *Van Fleet,* 47 Colo. at 407–12, 107 P. at 1089–91; *see also Duncan,* 44 Colo. at 474, 486–87, 98 P. at 636, 639–40; *Hayden,* 21 Colo. at 130, 139–40, 40 P. at 454, 457; *Du Bois,* 7 Colo.App. at 218–19, 221–22, 44 P. at 758–59. Though Silver relied extensively on *Van Fleet* in his Opening Brief, Colorado Casualty failed to address the decision in its Answer Brief, and we perceive no basis for distinguishing it (or *Duncan, Hayden,* and *Du Bois* ).

Colorado Casualty relies on one out-of-state case, *Foster,* 703 N.E.2d 657 (on which the district court also relied), and Colorado cases holding that a person is bound by the contents of a document that he signs. These authorities, however, do not persuade us that Colorado Casualty is correct.

■ *Foster* is contrary to the *Van Fleet* rule as applied in *Van Fleet* itself and other cases cited above. Though Foster is a much more recent decision than even the most recent decision applying the *Van Fleet* rule, we are not at liberty to disregard that rule absent some clear indication that the Colorado Supreme Court has overruled it. *Bernal v. Lumbermens Mut. Cas. Co.,* 97 P.3d 197, 203 (Colo.App.2003) (court of appeals is bound by decisions of the Colorado Supreme Court).

We acknowledge that there are a number of decisions of the Colorado appellate courts holding that a person who signs a document is bound by its contents, even if he claims not to have read it. *E.g., Rasmussen v. Freehling,* 159 Colo. 414, 417, 412 P.2d 217, 219 (1966); *Leverage Leasing Co. v. Smith,* 143 P.3d 1164, 1168 (Colo.App.2006). At first blush, there would appear to be some tension between those cases and, for example, *Van Fleet.* However, the *Van Fleet* rule does not ignore the fact the applicant may have signed the application. Rather, it regards the agent, and, through agency principles, the insurance company, as more culpable than the applicant where the applicant gave correct information to the agent, for the reason that the company issued the policy notwithstanding that it is deemed to have known of the false information. Both parties may be at fault, but the *Van Fleet* rule expresses a policy judgment that the risk of loss should fall on the insurance company in such circumstances.

■ Though Silver does not cast his argument in terms of estoppel, that is how the cases on which he relies, including *Van Fleet,* 47 Colo. at 408–09, 107 P. at 1090, characterize it. His estoppel argument is, in essence, a defense to Colorado Casualty's affirmative defense of rescission, one he did not raise until he responded to Colorado Casualty's motion for summary judgment. Because Colorado Casualty established a prima facie case of rescission in its motion, Silver had the burden of establishing that his estoppel defense applies here (or, more precisely, that there is a genuine issue of material fact as to

whether it applies here). *See Schultz v. Wells,* 13 P.3d 846, 848 (Colo.App.2000) (once the plaintiff-movant presented evidence that the defendant was negligent, it was incumbent on the defendant to show a genuine issue of material fact on her defense of sudden emergency to avoid summary judgment); *see also Black v. Southwestern Water Conservation Dist.,* 74 P.3d 462, 467 (Colo.App. 2003) ("[t]he burden of establishing estoppel falls on the party asserting it"); *Continental W. Ins. Co. v. Jim's Hardwood Floor Co., Inc.,* 12 P.3d 824, 828 (Colo.App.2000) (same); *Atlantic & Pacific Ins. Co. v. Barnes,* 666 P.2d 163, 165 (Colo.App.1983) ("[T]he burden of proof rests upon the party who asserts the affirmative of an issue.... The test is to determine which party would be successful if no evidence were given and then place the burden of proof on the adverse party." (citing *American Ins. Co. v. Naylor,* 101 Colo. 34, 70 P.2d 349 (1937))). We conclude that he met that burden.

The following evidence submitted in connection with the summary judgment motion supports Silver's contention that the *Van Fleet* rule, rather than the *Wich* rule, applies in this case:

- Silver testified in his deposition that he had several telephone conversations with Smith concerning the application.

- A "Property Quote" sheet Smith prepared based on her conversations with Silver contains her handwritten notations "partially gutted" and "vacant for 30."

- Silver testified in his deposition that "some of the things that [Smith] put down [in the application] were not correct and [he] never told her those answers."

This evidence reasonably could give rise to an inference that Silver told Smith that the property was partially gutted and vacant, but Smith put contrary information in the application.

■ On appeal, Colorado Casualty contends that we should not consider the Property Quote because it "bore no relevance on the issues presented by the [m]otion [for summary judgment] and failed to satisfy the requirements of Colo. R. Civ. P. 56(e)." In

light of our assessment of the applicable law, the relevance of the Property Quote is clear. Colorado Casualty did not object to the authenticity or admissibility of the Property Quote in the district court, and therefore waived any such objections to that document for summary judgment purposes. *Catrett v. Johns–Manville Sales Corp.,* 826 F.2d 33, 37–38 (D.C.Cir.1987) (party waives objections to documents submitted in connection with a summary judgment motion by failing to timely object); *Seitsinger v. Dockum Pontiac Inc.,* 894 P.2d 1077, 1080 (Okla.1995) (same); *Boller v. Key Bank of Wyo.,* 829 P.2d 260, 266–67 (Wyo.1992) (same); *see generally* 10A Charles Alan Wright, Arthur R. Miller & Mary Kay Kane, *Federal Practice and Procedure* § 2722, at 384–85 (3d ed.1998).

Because Silver established the existence of a genuine issue of material fact as to whether Colorado Casualty is estopped to assert its rescission defense, we must reverse the summary judgment.

### 2. Duty to Investigate

Though we reverse the summary judgment based on Silver's estoppel defense, we address his argument that Colorado Casualty had a duty to investigate the property before issuing the policy because the issue may arise on remand.

■ Colorado appellate courts have not addressed directly the question whether an insurer has a duty to investigate information contained in an insurance application. The general rule, however, adopted in the clear majority of jurisdictions, is that an insurer has a duty to investigate representations in an application only if it has sufficient information that would put a reasonably prudent insurer on notice of a possible misrepresentation and would have caused the insurer to begin an inquiry, which, if carried out with reasonable thoroughness, would have revealed the truth. *E.g., Miguel v. Metropolitan Life Ins. Co.,* 200 Fed.Appx. 961, 969, 2006 WL 2971331 (11th Cir.2006) (applying Florida law); *Chawla v. Transamerica Occidental Life Ins. Co.,* 440 F.3d 639, 647 (4th Cir.2006) (applying Virginia law); *First Nat'l Bank v. Modern Woodmen of America,* 486 F.2d 10, 14 (10th Cir.1973) (applying Kansas

**332**

law); *CenTrust Mortgage Corp. v. PMI Mortgage Ins. Co.*, 166 Ariz. 50, 800 P.2d 37, 43 (Ct.App.1990); *Foster,* 703 N.E.2d at 660; *Steptore v. Masco Constr. Co., Inc.*, 643 So.2d 1213, 1216 (La.1994); *Am. Sur. Co. v. Patriotic Assurance Co.*, 242 N.Y. 54, 150 N.E. 599, 602 (1926); *Hardy v. Prudential Ins. Co.*, 763 P.2d 761, 770 (Utah 1988).

We agree with this view. It is consistent with Colorado case law addressing the duty to investigate in other contexts. *Cf. M.D.C./ Wood, Inc. v. Mortimer*, 866 P.2d 1380, 1381–83 (Colo.1994) (purchasers did not have the right to rely on seller's agent's misrepresentation that a proposed road would not be constructed close to the property because an aerial photograph showed that the road would run adjacent to the property, thereby putting purchasers on inquiry notice); *Cherrington v. Woods*, 132 Colo. 500, 506, 290 P.2d 226, 228 (1955) ("'Whatever is notice enough to excite attention, and put the party upon his guard, and call for inquiry, is notice of everything to which such inquiry might have led. When a person has sufficient information to lead him to a fact, he shall be deemed conversant of it.'" (quoting *Groves v. Chase*, 60 Colo. 155, 161, 151 P. 913, 915 (1915))); *Brush Creek Airport, L.L.C. v. Avion Park, L.L.C.*, 57 P.3d 738, 749 (Colo. App.2002) (party could not rely upon alleged misrepresentation about the length of a runway when it was on inquiry notice of its length and had access to information that would have led to discovery of the true facts); *Modern Woodmen*, 25 Colo.App. at 35–36, 136 P. at 809–10 (statements of witnesses that the insured was "too much of a drinker" did not necessarily conflict with the insured's statements during the medical examination that he had an occasional beer; this information did not require the insurer to pursue an investigation beyond the medical examination).

■ In light of our conclusion that there is a genuine issue of material fact as to whether Silver told Smith the property was partially gutted and vacant, we also conclude that there is a genuine issue of material fact

as to whether Colorado Casualty was on inquiry notice that the contrary statements in the application were false. *Cf. Hardy,* 763 P.2d at 763, 769–71 (where insured alleged that he told insurer's field agent he had had a heart attack in 1974, and insurer possessed other information indicating insured had health problems, insurer was on inquiry notice of insured's past medical conditions). Accordingly, we reverse the summary judgment in Colorado Casualty's favor on this issue.

**D. Evidence Supporting the Motion for Summary Judgment**

Silver contends that the district court erred in relying on several documents that were not authenticated. In light of our disposition of his primary contentions and our resulting reversal of the summary judgment, we need not address this contention.

The judgment is reversed and the case is remanded for further proceedings.

Judge GABRIEL and Justice ROVIRA * concur.

---

* Sitting by assignment of the Chief Justice under provisions of Colo. Const. art. VI, § 5(3), and

§ 24–51–1105, C.R.S.2008.